## In re DUNCAN.

### No. 14038.

District Court, E. D. Virginia.

July 6, 1940.

Walter E. Hoffman, of Norfolk, Va., for trustee and debtor.

Savory E. Amato, of Norfolk, Va., for lien creditor.

WAY, District Judge.

The Referee's findings show, among other things, that on March 5, 1938, the debtor purchased the frigidaire from a dealer under a conditional sales contract at the price of $215, plus financing charges of $30.40, making a total of $245.40, $25 of which was paid in cash. The balance of $220.40 was payable in thirty-two monthly installments of $6.90 each, beginning April 18, 1938, and secured by a conditional sales contract reserving title to the frigidaire in the seller until the full purchase price was paid. The contract of sale was made, executed and docketed in accordance with the

requirements of the statute (Virginia Code, § 5189), so that no question with reference to the validity of the contract or its being properly docketed is presented. The dealer discounted the contract with the bank.

The debtor regularly made his monthly payments to the bank up to and including that due July 18, 1939. He made no payments in August, September and October, 1939, but made one in November of that year, which was the last payment made before the above entitled proceedings were filed. The payments reduced the debt to $123.80, to which the bank has added $12.-38 attorney's fee and $4.83 past due charges, a total of $141.01 still owing to the bank under the contract.

On February 8, 1940, the debtor filed the above entitled petition pursuant to Chapter 13 of the Bankruptcy Act of 1938. 11 U.S.C.A. §§ 1001–1086. At a meeting of creditors held on March 22, 1940, the debtor submitted his proposal. In due time the required number of unsecured creditors accepted the proposal and the same was approved by the Referee. On April 17, 1940, the bank filed its petition representing that it was the holder of the conditional sales contract, that the contract was duly recorded, that the debtor was indebted to petitioner in the sum of $123.80, plus attorney's fees and past due charges above referred to, all amounting to $141.01, and praying that the court enter an order permitting the bank to repossess the said frigidaire.

The filing of its petition herein was the first action taken by the bank following the default of the debtor, which, as above stated, began in August 1939, and with the exception of a payment in November 1939, continued up to the time the reclamation petition was filed on April 17, 1940. In his proposal the debtor, among other things, proposed to resume his payments of $6.90 a month to the bank and to continue them until the frigidaire was fully paid for. The bank declined to agree to the proposal and insists that it be permitted to recover possession of the frigidaire, sell the same, credit the amount received therefor on said balance and file its claim against the debtor for any deficiency.

The Referee found that the debtor as a result of the payments made by him, had a substantial equity in the frigidaire and accordingly did not grant the petition of the bank for abandonment but stayed the proceedings until the further order of the court, and directed the trustee appointed in this case as funds accumulate in his hands to distribute the same to the secured creditors, of which fund the bank was to receive $6.90 per month until the balance of $141.01 is paid in full.

The stay order was entered May 14, 1940, and provided, however, that in the event the debtor failed to make the payments in accordance with his proposal and there should be any lapse or default in the payments called for by the contract, the bank could renew its motion for abandonment and vacation of the stay.

In addition to the Referee's findings, counsel for the bank and the trustee have stipulated that the trustee (presumably since the entry of the stay order) has made legal tender to the bank of two monthly payments of $6.90 each, out of funds collected from the debtor, which tender was refused by the bank on the ground that the entire balance of $141.01 is due and payable and further that the records of the Referee do not show that the fee of the attorney for the debtor has been allowed or paid.

The debtor is unable to pay the entire balance of $141.01 or all the payments now in arrears, at one time, but since his arrangement with his other creditors is able to make a payment of $6.90 each month in accordance with his proposal to the bank.

The court is of the opinion that the stay order entered by the Referee is authorized by the provisions of Chapter 13, that under the facts found and stipulated the order is not unreasonable or arbitrary and that the order does not deprive the bank of any right guaranteed to it by the constitution. Under the provisions of Section 614, 11 U.S.C.A. § 1014, 52 Stat. 931, the court "may, upon notice and for cause shown, enjoin or stay until final decree any act or the commencement or continuation of any proceeding to enforce any lien upon the property of a debtor". The fact that the debtor has a substantial equity in the frigidaire and is ready and able to continue the payments of $6.90 per month is sufficient cause to justify the order entered by the Referee. The order appealed from merely stays the proceedings until the further order of the court and expressly provides that in the event the debtor fails to comply with his proposal the bank can renew its motion for abandonment and vacation of the stay. The term "final decree" is defined in Section 662, 11 U.S.C.A. §

1062, to be a consummation of the proceedings as provided in either Section 1060 or Section 1061, and it is apparent that if the debtor continues his payments at $6.90 per month the total balance of $141.01 will be paid before the debtor is entitled to a final decree under either Section 1060 or Section 1061.

With respect to the contention of the bank that the stay order entered by the Referee violates its constitutional rights, it seems to me that the case presented, although arising under a different chapter of the Bankruptcy Act, is analogous to the cases of Wright v. Vinton Branch, 300 U. S. 440, 57 S.Ct. 556, 81 L.Ed. 736, 112 A. L.R. 1455; Wright v. Union Central Life Insurance Company, 304 U.S. 502, 58 S.Ct. 1025, 82 L.Ed. 1490; and John Hancock Insurance Company v. Bartels, 308 U.S. 180, 60 S.Ct. 221, 84 L.Ed. 176. In Wright v. Union Central Life Insurance Company, supra, 304 U.S. at page 517, 58 S.Ct. at page 1033, 82 L.Ed. 1490, the court said:

"If the argument is that Congress has no power to alter property rights, because the regulation of rights in property is a matter reserved to the States, it is futile. Bankruptcy proceedings constantly modify and affect the property rights established by state law. A familiar instance is the invalidation of transfers working a preference, though valid under state law when made. Recent decisions illustrate other instances:

" 'A court of bankruptcy may affect the interests of lienholders in many ways. To carry out the purposes of the Bankruptcy Act, it may direct that all liens upon property forming part of a bankrupt's estate be marshaled; or that the property be sold free of encumbrances and the rights of all lienholders be transferred to the proceeds of the sale. Van Huffel v. Harkelrode, 284 U.S. 225, 227, 52 S.Ct. 115, 76 L.Ed. 256, 78 A.L.R. 453. Despite the peremptory terms of a pledge, it may enjoin sale of the collateral, if it finds that the sale would hinder or delay preparation or consummation of a plan of reorganization. Continental Illinois Nat. Bank & Trust Co. v. Chicago, R. I. & P. Ry. Co., 294 U.S. 648, 680, 681, 55 S.Ct. 595, 79 L.Ed. 1110. It may enjoin like action by a mortgagee which would de-feat the purpose of (section 75) subsection (s) to effect rehabilitation of the farmer mortgagor.' Wright v. Vinton Branch, 300 U.S. 440, at page 470, 57 S.Ct. 556, 565, 81 L.Ed. 736, 112 A.L.R. 1455."

If the court can, upon conditions reasonably certain to protect the mortgage creditor, stay the enforcement of a mortgage upon a farm for a period not exceeding three years, it is not apparent why it may not under the provisions of Chapter 13, stay the enforcement of a conditional sales contract for a modern household necessity such as a frigidaire for a shorter period upon a reasonable condition that the wage-earner shall regularly make his monthly payments in accordance with the contract until the balance due is paid, or if he fails to do so, the creditor may apply for a vacation of the stay and the enforcement of its rights under the contract. This is especially true in the instant case, where at the time the debtor filed his petition the creditor had, without taking any action, allowed the debtor to become many months in default and took no action whatever until the lapse of more than two months after the debtor's petition was filed. The law does not favor forfeitures and it was not unreasonable to infer from the circumstances acquiescence by the bank in the debtor's default, or at least that the bank did not regard the default as seriously affecting its security for payment of the debt.

The contention that the debtor has no equity whatever in the frigidaire is not well-founded. Were this contention carried to its logical conclusion, if the debtor had before filing his petition made every payment except the last, the creditor would still have a right to forfeit all of his equity in the frigidaire. This seems to demonstrate the fallacy of that contention.

Nothing said herein is intended to apply to a case under Chapter 13, where the evidence does not show that the debtor has a substantial equity and where the creditor has not acquiesced in defaults of the debtor but has required strict observance of the terms of the conditional sales contract.

An order approving and confirming the order of the Referee will be entered upon presentation.