**In re Betty PIZZOLATO, Debtor.**

**No. 154.**

United States District Court
W. D. Arkansas,
Hot Springs Division.

May 24, 1967.

Wootton, Land & Matthews, Hot Springs, Ark., for the Bank.

Joel C. Cole, North Little Rock, Ark., for debtor.

## OPINION

JOHN E. MILLER, District Judge.

This cause is before the court on a "Petition for Review" filed by the Arkansas First National Bank of Hot Springs, Arkansas. On April 3, 1967, the bank filed before the Bankruptcy Court a "Petition for Reclamation," wherein the bank stated that it held a promissory note and conditional sales contract executed by Betty Pizzolato and secured by one 1964 Dodge automobile; that payments on the note were in default; that the bank did desire to repossess the automobile pursuant to the terms of the conditional sales contract. The petition further stated that the bank, as a secured creditor, rejected the plan proposed, whereby Betty Pizzolato would extinguish her debts owed to various creditors.

The Referee in Bankruptcy issued an order dated April 19, 1967, denying the petition for reclamation. The bank then filed its petition for review on May 8, 1967, in which it requested the court to reverse the aforementioned order of the Referee. The Referee has filed his certificate and the bank has submitted its brief. The debtor has also submitted brief.

The facts as found by the Referee are not disputed by the petitioner bank. There is nothing, therefore, to indicate that the facts are "clearly erroneous," and they are accepted by the court pursuant to Order 47 of General Orders in Bankruptcy.

Mrs. Betty Pizzolato (hereinafter referred to as the debtor) is a practical nurse at St. Joseph Hospital at Hot Springs, Arkansas. She resides some distance from the hospital on Route 7. She is married to a disabled veteran, who is unemployed but draws compensation from the Veterans Administration. Their combined monthly take-home income is $416.90. The Pizzolatos have twin children living at home and both are in school. The Dodge automobile in question is used daily and frequently in providing transportation for the debtor to go to and from her employment, and for transporting her husband for medical treatment by physicians, both in Hot Springs and Little Rock. The vehicle is also otherwise used for normal domestic requirements. The vehicle is necessary for the family and for the stability of the proposed plan, and without it the plan would collapse.

On March 19, 1964, the debtor executed her promissory note in the amount of $3,364.56 in favor of Beasley Motor Co., Inc., payable in monthly installments of $93.46. The note was executed in conjunction with a conditional sales contract covering the Dodge automobile, heretofore mentioned, which Betty Pizzolato purchased from the said Beasley Motor Co., Inc. On the same date the motor company assigned its interest in the note and contract to Arkansas First National Bank of Hot Springs. On December 8, 1965, the debtor refinanced and executed her promissory note to Beasley Motor Co., Inc., in the amount of $1,555.36, payable in seventeen monthly installments, the first sixteen in the amount of $70 and the last payment (the 17th) in the amount of $435.36. The motor company again assigned all its interest in the note to the bank. The debtor made the payments required by the contract through January 1967.

On February 21, 1967, after timely notice was given, a meeting of creditors was held at Hot Springs, Arkansas, at which meeting the debtor proposed to liquidate her debts as provided for in Chapter XIII of the act. The plan proposed $50 per month for payments on the automobile, $40 additional for the general creditors, and reduced sums to certain other secured creditors. The plan was amended whereby the bank would be paid $70 per month, the amount called for in the promissory note. All of the general creditors accepted the plan but the bank did not. The debtor has now paid into the registry of the court sums sufficient to pay the $70 installments due the bank for February, March, and April 1967, and a substantial amount which could be applied on the balloon payment for May 1967.

The issue which must be resolved by the court may be stated as follows: Whether the bankruptcy court can, pursuant to a Chapter XIII debtor's plan, enjoin a non-consenting secured creditor (here, the bank) from foreclosing where the collateral sought (the automobile) is essential to the plan and the security will not be impaired, but the secured creditor will not be able to collect the payments due precisely according to the terms of its contract. Like most legal questions posed in a vacuum, this question does not lend itself to a stock answer.

As was recognized by the Referee and pointed out in his certificate, there is a dearth of printed opinions touching the precise issues now before the court. None of the opinions which have been brought to the attention of the court deal with problems identical to those presented in the case now before the court.

■ It seems to be settled law that a secured creditor who does not consent to the proposed plan of the debtor cannot be adversely "dealt with" by the plan. In re O'Dell, (D.Kan. 1961) 198 F.Supp. 389. The court understands that decision to mean that if the plan calls for payment to the secured creditor which is less than he was to receive according to his contract, the creditor may not be forced to participate in the plan. In that case, the petitioner, a creditor whose debt was secured by an automobile, met with the other creditors when the proposed plan was announced. The petitioner rejected the plan but it was confirmed by the Referee. Pursuant to the plan, the debtor, whose contract payments on all secured debts were over $38 per week, was to pay the Trustee $37 per week, with secured creditors having priority over unsecured creditors but receiving monthly payments on a pro rata basis. The petitioner, as a non-consenting, secured creditor, objected to the plan, and contended that the court had no power to reduce its payments below the terms of its contract. Without discussing the facts in detail, the District Court held that the plan "'which does not provide for assumption of executory contracts by the trustee or otherwise make provision for the payment of the claims of secured creditors according to the terms of the instrument creating the debt, *does deal with such claims*. A plan without such provisions should not be confirmed unless accepted by the secured creditors." (Emphasis added.) 198 F.Supp. at p. 391. The court reversed the order of the Referee confirming the plan.

The court does not feel constrained to follow the O'Dell case for two reasons: first, because the facts on which that decision was based (and which doubtlessly justified the outcome) were not detailed in the opinion; and second, the primary issues in that case were whether the secured creditor was "dealt with" by the plan and whether a non-consenting secured creditor can be forced to collect his payments pursuant to said plan. The question of the court's authority to enjoin foreclosure was not considered.

While "dealing with" a non-consenting secured creditor and enjoining his foreclosure are related propositions, they are by no means inseparable. It can be determined whether or not a secured creditor is "dealt with" by a wage-earner's plan merely by considering the plan together with the security agreement in question. If the plan calls for payments to the creditor in amounts less than the contract, the plan "deals with" the secured creditor. There can be no doubt that the plan in the case at bar "deals with" the petitioner, a non-consenting, secured creditor. By the terms of their contract the debtor was to pay petitioner $70 per month up to the last month when the payment of $435.36 would be due. The plan calls for payments of $70 per month, but makes no provisions for the so-called "balloon payment."

The decision of whether or not that creditor should be enjoined from foreclosing and reclaiming the collateral presents a much more complex problem, which requires the court to consider every possible effect such a decision would have on the parties.

The court's authority to enjoin fore-closure is granted in § 614 (11 U.S.C.A. § 1014), which reads as follows:

"The court may, in addition to the relief provided by section 29 of this title and elsewhere under this chapter, enjoin or stay until final decree the commencement or continuation of suits other than suits to enforce liens upon the property of a debtor, and may, upon notice and for cause shown, enjoin or stay until final decree any act or the commencement or continuation of any proceeding to enforce any lien upon the property of a debtor."

The statute itself gives no insight into when or in what manner the injunctive power is to be exercised. The statement, "for cause shown," indicates that Congress intended the injunction should be issued when, in the sound discretion of the court, such an injunction is necessary to meet the ends of equity and justice. While there are no printed opinions directly in point, a study of those few cases construing the statute leads the court to believe that this is the majority rule.

In re Copes, (D.Kan. 1962) 206 F. Supp. 329, is relied on heavily by petitioner as supporting the proposition that a non-consenting secured creditor may not be enjoined from foreclosing if the wage-earner plan will reduce or delay payments to that creditor. That case, like the one at bar, was before the court on a petition for review of a Referee's order denying reclamation. There the creditor had a contract with the debtor, secured by furniture, calling for payments of $45.61 per month. Under the plan approved by the Referee, these payments were to be reduced to $27 per month. The court reversed the Referee's order for the reason that the plan "does not provide for payments according to the terms of the contract. The order renders B-W (creditor) an involuntary participant in the plan."

At first blush it would appear that the petitioner is correct, and that Copes does in fact support its contention.

When stripped to a bare statement of law, the holding in that case might be stated thusly: If a debtor's plan provides for payments to a non-consenting secured creditor not in accord with (i.e. less than) the terms of the contract, the creditor may reclaim his collateral when the debtor defaults. If this be the holding of the Copes case, then this court must respectfully disagree. However, close scrutiny of that opinion reveals definite and pertinent factual distinctions from the case at bar. There the plan provided for almost one-half reduction in the monthly payments. Also, there is nothing in the opinion to indicate how much equity the debtor had in the collateral nor was the possibility of impairment of security mentioned. The Referee found the furniture to be "essential" for the rehabilitation plan, but, without more, this court could hardly believe that the furniture there was as "essential" to the plan as the automobile in the instant case, because here the automobile is necessary for the debtor's employment. She uses it to travel some distance to and from work, and without it she could not continue in her present employment.

In re Clevenger, (7 Cir. 1960) 282 F.2d 756, appears to be factually similar to the instant case. There a secured creditor rejected the debtor's plan and filed a petition for reclamation of its collateral. The Circuit Court of Appeals affirmed the lower court and the Referee's order denying reclamation. The court did not set forth its reasoning in great detail, but it is clear that the extent of the debtor's equity in the collateral was considered important. Also, the facts that the security would not be impaired and that the payments would not be *seriously* delayed were given consideration.

The facts here are similar to those in Clevenger in that the debtor (Mrs. Pizzolato) had considerable equity in the automobile. The original note was in the amount of $3,364.56, which represented the price of the car at the time less the down payment. Of this amount

the debtor owed $645.36 in February 1967, when she became in default.

Here, also, the payments to the secured creditor would not, in the opinion of the court, be "seriously" delayed. Pursuant to the plan, $70 payments were made to the trustee for February, March and April 1967. These sums were earmarked for the bank and are being held for the bank at this time. The only delay caused by the plan would be with respect to the balloon payment of $435.-36 for May 1967. At $70 per month this could be paid with interest in seven or eight months. It is the opinion of the court that this delay is not sufficient grounds to upset the entire plan and possibly force the debtor into bankruptcy.

There could be no conceivable impairment of the bank's security because it is undisputed that the automobile has a present value greatly in excess of the amount now owing on the note.

In re Wilder, (M.D.Ga. 1963) 225 F.Supp. 67, cites with approval In re Clevenger, supra, and also In re Duncan, (E.D.Va. 1940) 33 F.Supp. 997. Wilder involved a Chapter XIII plan whereby monthly payments to the non-consenting secured creditor would not actually be reduced, but the liquidation of the entire debt would be delayed because the debtor was two months in arrears at the time of confirmation of the plan and no provision was made for making up these payments. Therefore, the arrearage would have to be tacked on to the end and thereby extend the period of payment two months. The court affirmed the order of the Referee by which the plan was approved, relying on basic concepts of justice and equity. The court recognized that the creditor would not be "materially and adversely affected" by the plan.

> "Comparing creditor's position as it existed as of the moment of confirmation of debtor's plan with its position immediately following that confirmation the court fails to see that creditor's interest was 'materially and adversely' affected."

The court also noted that the possibility of impairment of security had not been suggested. The sound judgment and common sense which prompted the decision in Wilder should always be the foundation upon which similar Chapter XIII disputes are to be resolved. The case at bar is no exception. Technically the contract of petitioner was "dealt with" but was not materially and adversely affected.

The question has been raised that the jurisdiction of the bankruptcy court might not extend to property securing debts owed to non-consenting secured creditors. While these creditors as a general rule may not be forced to participate in the plan, the court nevertheless retains jurisdiction over all property of the debtor, and thereby possesses the authority to enjoin, in a proper instance, any foreclosure on that property which may continue during the pendency of the case. See In re Garrett, (N.D.Ala. 1962) 203 F.Supp. 459; Hallenbeck v. Penn. Mutual Life Ins. Co., (4 Cir. 1963) 323 F.2d 566.

It is clear that to allow the foreclosure would be highly inequitable in view of the facts and circumstances surrounding this case. The bank is in the business of lending money and collecting interest thereon. In this case it appears that the bank will recover the total amount due it together with interest, and, as mentioned above, it is *highly* unlikely that any impairment of the security could occur. On the other hand, if the foreclosure were allowed, the plan would most likely be destroyed. Mrs. Pizzolato's other secured creditors would only partially recover, and the general creditors would recover little, if anything. Also, Mrs. Pizzolato who is making a sincere effort to retire her debts in full, would be deprived of this opportunity and would be forced to suffer bankruptcy with its attendant personal embarrassment and other unfortunate consequences. When these facts are placed on the scales of equity, they overwhelmingly balance in favor of the injunction.

It is therefore the opinion of the court that the petition for reclamation was properly denied and that the Referee was correct in enjoining foreclosure of the automobile. However, the Referee's order did not specify the manner in which the balloon payment was to be paid. The court is of the opinion that the $70 monthly payments should be continued until the $435.36 debt is retired with interest.

Therefore, an order is being entered affirming the order enjoining the petitioner and remanding the case for modification of the order in accordance with this opinion.