**In the Matter of Edward J. CHEETHAM, Debtor.**

**No. BK–67–167.**

United States District Court
D. Maine, S. D.

July 20, 1967.

Theodore H. Kurtz, Christopher A. Moen, Jr., Portland, Me., for Universal C. I. T. Credit Corporation, petitioner for review.

Gerald S. Cope, Portland, Me., Trustee pro se. Richard L. Barton, Brunswick, Me., for debtor.

## OPINION AND ORDER OF THE COURT

GIGNOUX, District Judge.

Universal C. I. T. Credit Corp. petitions for review of an order of the referee in bankruptcy confirming the plan submitted by the debtor for an extension of time in which to pay his debts out of his future earnings and wages under the provisions of Chapter XIII of the Bankruptcy Act, 11 U.S.C. §§ 1001–1086 (1964).

In the schedules attached to his petition filed February 16, 1967 the debtor listed a debt to petitioner in the amount of $450, secured by a 1963 Econoline (Ford) automobile having a value of $900. This debt was not disputed by the debtor. He also listed two other secured debts totaling $761.72 and 14 unsecured debts in the total amount of $2,613.30. The debtor's plan, which was filed by the debtor on a printed form supplied to him by the referee at the first meeting of creditors, proposed payments of $20 per week to the trustee for distribution to his creditors. The plan provided that unsecured creditors were to be paid 100% of their claims in five equal installments. With respect to secured creditors, the plan contained the following provision:

6. *Secured claims:* Nothing is proposed by this plan which may materi-

ally and adversely affect the interest of any creditor having a valid security interest in any of the debtor's property. Any secured claim, as proved and allowed, which may be materially and adversely affected, shall not be dealt with by this plan until such time as a written acceptance from such creditor is filed with the Court.

a. Secured claims, as filed, proved and allowed, held by creditors who accept the plan, shall be paid monthly installments and reasonable interest on the secured portion of such claims, in such manner as determined and allowed by the Court. Such monthly installment shall have priority of payment over unsecured and priority claims other than costs of administration.

b. Payment to non-assenting secured creditors may be made by the trustee in such manner as may be permitted under the law, without regard to any other provision of this plan. Such claims, as proved and allowed, shall have priority of payment over the unsecured and priority claims, other than costs of administration, in such manner and amounts as determined by the Court.

The plan further provided:

7. On and after the filing of the petition for a wage earner's plan under Chapter XIII of the Bankruptcy Act, the Court shall have jurisdiction of the debtor and his property and his entire future earnings and wages for all purposes of the plan. Title to the debtor's property shall revest in the debtor upon consummation of this plan or upon the dismissal of these proceedings unless upon such dismissal

the debtor consents to adjudication as a bankrupt.

At the first meeting of creditors held on March 14, 1967, petitioner appeared by counsel and represented that it was a secured creditor as listed in the debtor's schedules, by virtue of a conditional sales contract on the 1963 Econoline, and that the unpaid balance on its claim was $381.63. Petitioner further stated that it was prepared to prove its security and that it rejected the plan. The referee refused to permit petitioner to offer proof of its security, and continued for a later determination the question of the validity of petitioner's claim. The plan having been accepted by a majority in number and amount of the unsecured creditors whose claims had been proved and allowed at the meeting,[1] the referee, over petitioner's vehement objection, found that the plan had been duly accepted in accordance with the provisions of Chapter XIII and entered an order declaring the plan accepted and appointing a trustee.[2] The debtor thereupon filed an application for confirmation of the plan, and at petitioner's request the hearing on confirmation was continued to a later date.

At the hearing on the application for confirmation of the plan held on April 27, 1967, petitioner again appeared by counsel and objected to confirmation of the plan on the ground that no order of confirmation could properly be entered until petitioner's status as a secured creditor had been determined, so that it might decide whether to accept or reject the plan. The referee, taking the position that the plan dealt exclusively with unsecured creditors and "in no way materially affects any secured creditor,"[3] found that the provisions of

---

1. See Section 652(1) of the Act, 11 U.S.C. § 1052(1) (1964), discussed *infra.* Five unsecured creditors filed claims totaling $1,009.18, which were proved and allowed at the meeting. All five accepted the plan.

2. Counsel for petitioner at oral argument agreed that an earlier petition filed by

Universal for review of the order of the referee declaring the plan accepted may be considered as having been merged in the present petition.

3. Although the referee has filed no formal opinion, his views are evident from the following statement made by him during

Chapter XIII had been complied with and confirmed the plan. The order of confirmation directed payment by the debtor to the trustee of $20 per week, and ordered the trustee, after paying the costs of administration and as sufficient funds became available, to make specified monthly payments to two assenting secured creditors and thereafter to pay unsecured creditors 100% of their claims in five equal installments. With respect to non-assenting secured creditors, the order of confirmation provided that, after payment of costs of administration and the installments provided for the assenting secured creditors, the trustee was to make payment as follows:

4. * * *

> (c) Monthly installments to properly perfected and established non-assenting secured claims in such manner as may be approved or allowed by this court.

All payments to creditors were made subject to the right of the court, upon application of the debtor or trustee, without notice to creditors, to grant "any temporary reduction in or suspension of installment payments under this plan for a period not to exceed ten (10) weeks." Finally, the order provided that "the Court retains jurisdiction of the debtor and his property as provided by Section 658(1) and (2) of the Act."

The sole issue presented by the present petition for review is whether the order of confirmation was properly granted. For the reasons hereinafter stated, the Court holds that the referee erred in confirming the debtor's plan over petitioner's objection, and the order of confirmation is reversed.

Chapter XIII provides that a wage earner plan "shall include provisions dealing with unsecured debts generally, upon any terms", and "may include provisions dealing with secured debts severally, upon any terms." Bankruptcy Act § 646(1), (2), 11 U.S.C. § 1046(1), (2) (1964).[4] Under Section 652(a) of the Act, 11 U.S.C. § 1052(a) (1964), if a plan has not been unanimously accepted by all affected creditors pursuant to Section 651, 11 U.S.C. § 1051 (1964), an application for confirmation of the plan may be filed with the court only

> after, but not before—

> (1) it has been accepted in writing, if unsecured creditors are affected by the plan, by a majority in number of all such creditors whose claims have been proved and allowed before the conclusion of the meeting, which number shall represent a majority in amount of such claims, *and by the secured creditors whose claims are dealt with by the plan * * *.* (Emphasis supplied.)

Section 656(a), 11 U.S.C. § 1056(a) (1964), further provides:

> The Court shall confirm a plan if satisfied that—

> (1) the provisions of this chapter have been complied with * * *.

> \* \* \* \* \* \*

■ It is eminently clear from the above provisions of the Act that if a secured creditor is dealt with by a wage earner plan, then that creditor must ac-

---

a colloquy with petitioner's counsel at the first meeting of creditors:

THE COURT: Now, I don't want to hear any more, forget it. Any interest that Universal C.I.T. has will be continued for a later determination, and the Court will go forward with the Plan as submitted. If you have any interest, then bring it to the attention of the Court, and we will * * *. As I see this Plan, this Plan is submitted for the purpose of extending claims of unsecured creditors, and all such secured creditors who consent to the Plan. If there are any se-

cured creditors who wish to reject, they are not part of the Plan, and so, you may do as you see fit. In other words, you are not affected by this Plan at all, as I see it. *However, if you wish to be paid, or if you wish to reclaim the car, you must proceed in an appropriate manner in this Court.* (Emphasis supplied.)

4. The term "debts" is defined to include all claims whether secured or unsecured, other than claims secured by estates in real property or chattels real. Bankruptcy Act §§ 606(1) and (4), 11 U.S.C. § 1006(1) and (4) (1964).

cept the plan in writing before the court can confirm it. Interstate Finance Corp. v. Scrogham, 265 F.2d 889 (6th Cir. 1959); In re O'Dell, 198 F.Supp. 389 (D.Kan.1961); In re Pappas, 216 F.Supp. 819 (S.D.Ohio 1962); 10 Collier, Bankruptcy, para. 29.02 (14th ed. 1965). It is further evident from these provisions that the written acceptance of such a creditor must be obtained whether or not his claim has been proved and allowed. Interstate Finance Corp. v. Scrogham, supra; In re O'Dell, supra; 10 Collier, supra.[5] It follows that if, in the present case, the plan "dealt with" the claim of petitioner, confirmation over its objection was improper.[6]

 The wage earner plan as confirmed by the referee in this case plainly "dealt with" petitioner's claim.[7] Under the plan as confirmed, costs of administration and secured claims held

by creditors who have accepted the plan have priority over secured claims held by creditors who have not accepted the plan. Such non-assenting secured creditors are entitled to payment only after their claims have been "properly perfected and established," and even then only "in such manner as may be approved or allowed" by the court. The plan also provides that any payments may be temporarily reduced or suspended by the court at any time without notice to creditors. Nowhere in the debtor's plan or in the order of confirmation is provision made for payment to petitioner in accordance with the terms of its contract. Furthermore, it is clear that the debtor is not to make any payments outside of the plan, and that if petitioner is to obtain any distribution at all, petitioner is required by the plan to accept from the trustee such payments as the court may approve.[8]

5. As the court pointed out in Scrogham, 265 F.2d supra at 892,
 Congress specifically stated (in Section 652(1)) that only those unsecured creditors whose claims were *proved and allowed* could be counted in the consideration of the acceptance of the plan. If it had intended that listed secured creditors should have their claims *proved and allowed* before registering an objection it could have said so with equal clarity.

6. In view of the express requirement of Section 652(1) that a written acceptance must be obtained from all secured creditors dealt with by the plan before an application for confirmation may be filed, it is plainly the obligation of the referee to determine *in advance of confirmation* the secured status of any such creditor whose claim may be disputed either in the debtor's schedules or otherwise before the conclusion of the first meeting of creditors. In re Pappas, supra; Hilliard & Hurt, "Wage Earner Plans Under Chapter XIII of the Bankruptcy Act," 19 Bus.Law. 271, 283-85 (1963). As the court stated in In re Pappas, supra, at 822-823.
 The duty is upon the wage earner to obtain the acceptance in writing from the necessary secured creditors *before* filing his application for confirmation. The statute cannot be construed to allow a referee to file an Order con-

firming the plan and therein require a secured creditor to participate in the plan or file a reclamation petition.

7. For present purposes the Court accepts the referee's view that the phrase "dealt with" as it is used in Section 652(1) is synonymous with the term "affected" as used in the same section and as defined in Section 607 of the Act, 11 U.S.C. § 1007 (1964), which provides:
 Sec. 607. A creditor shall be deemed to be "affected" by a plan only if his interest shall be materially and adversely affected thereby. * * *
 Cf. In re Clevenger, 282 F.2d 756, 757 (7th Cir. 1960); In re Wilder, 225 F. Supp. 67, 69 (M.D.Ga.1963).

8. That the referee so interprets the plan is evident from his colloquy with petitioner's counsel at the first meeting of creditors. See n. 3, supra, in which he concluded:
 If you wish to be paid, or if you wish to reclaim the car, you must proceed in an appropriate manner in this Court.
 It is also apparent from the following statement made by him to petitioner's counsel at the confirmation hearing:
 Now, you know very well that under such circumstances, that if the Court were to find you secured, it would very likely give you the full unpaid, the full closeout of your account, plus reasonable interest, plus probably even more

Nor is the petitioner free to assert its contract rights independently of the bankruptcy court, either by suit against the debtor or by direct action to enforce its lien. The plan and the order of confirmation both specifically provide that the bankruptcy court shall have jurisdiction of the debtor, his property and his earnings for all purposes of the plan. Even apart from this, the bankruptcy court has such exclusive jurisdiction by virtue of Sections 611 and 658 of the Act.[9] Under Section 657 of the Act, the plan, after confirmation, is binding upon all creditors of the debtor "whether or not they are affected by the plan or have accepted it * * *[10]." Petitioner is also subject to the provisions of Section 614, authorizing the bankruptcy court to stay until final decree any suit against the debtor or any act or proceeding to enforce a lien upon his property.[11] It has been consistently held that these provisions of Chapter XIII, like the comparable provisions of Chapter XI, require any secured creditor seeking to enforce his lien or other contract rights, to do so in the bankruptcy court in lieu of pursuing the remedies which would otherwise be available to him under state law. In re Clevenger, 282 F.2d 756, 757 (7th Cir. 1960); In re Pappas, supra, at 823; In re O'Dell, supra, at 391; In re Duncan, 33 F.Supp. 997 (E.D.Va.1940); 10 Collier, supra, paras. 23.01, 23.05; see: Hallenbeck v. Penn Mut. Life Ins. Co., 323 F.2d 566 (4th Cir. 1963); cf. Isaacs v. Hobbs Tie & Timber Co., 282 U.S. 734, 737, 51 S.Ct. 270, 75 L.Ed. 645 (1931); Lockhart v. Garden City Bank & Trust Co., 116 F.2d 658 (2d Cir. 1940) (ch. XI); In re Tracy, 194 F.Supp. 293 (N.D.Cal.1961) (ch. XI); 8 Collier, supra, paras. 3.01–3.05, 3.22(1) (ch. XI).

The case of In re Clevenger, 282 F.2d 756 (7th Cir. 1960) cited by the trustee, is clearly distinguishable from the present case. In *Clevenger* the plan provided that "secured debts held by creditors who accept the plan shall have priority over the unsecured debts and shall be dealt with severally and will be paid as proved and allowed", and provided for the assumption of executory contracts. Id. at 756. In sustaining the order of the referee confirming the plan over the objection of secured creditors, the court observed that "these executory contracts had been assumed by

---

than the contract payments under your particular note.

As petitioner points out, the "full close-out" of its account would be an amount substantially less than that called for by its contract.

9. Section 611, 11 U.S.C. § 1011 (1964) provides:

Sec. 611. Where not inconsistent with the provisions of this chapter, the court in which the petition is filed shall, for the purposes of this chapter, have exclusive jurisdiction of the debtor and his property, wherever located, and of his earnings and wages during the period of consummation of the plan.

Section 658, 11 U.S.C. § 1058 (1964) provides:

Sec. 658. During the period of extension, the court—

(1) shall retain jurisdiction of the debtor and his property for all purposes of the plan and its consummation and shall have supervision and control of any agreement or assignment, provided for in the plan, in respect to any future earnings or wages of the debtor; and

(2) may issue such orders as may be requisite to effectuate the provisions of the plan * * *.

10. Section 657, 11 U.S.C. § 1057 (1964) provides:

Sec. 657. Upon confirmation of a plan, the plan and its provisions shall be binding upon the debtor and upon all creditors of the debtor, whether or not they are affected by the plan or have accepted it or have filed their claims, and whether or not their claims have been scheduled or allowed or are allowable.

11. Section 614, 11 U.S.C. § 1014 (1964) provides:

Sec. 614. The court may, in addition to the relief provided by section 11 of this Act and elsewhere under this chapter, enjoin or stay until final decree the commencement or continuation of suits other than suits to enforce liens upon the property of a debtor, and may, upon notice and for cause shown, enjoin or stay until final decree any act or the commencement or continuation of any proceeding to enforce any lien upon the property of a debtor.

the Trustee; hence, it was his duty to make payments, if possible, in an amount at least as large as was called for in the purchase contracts." Id. at 757.[12] In the present case the plan does not provide for payment to petitioner according to the terms of its contract. In fact, there can be no question that the order of confirmation made petitioner "an involuntary participant in the plan" in derogation of its contract rights. In re Copes, 206 F.Supp. 329, 330 (D.Kan. 1962).

Under the circumstances disclosed by the present record, it would be wholly unrealistic to conclude that petitioner's claim is not "dealt with by the plan." In re O'Dell, supra, at 391; In re Pappas, supra, at 822. In short, this Court is persuaded, as was the court in In re O'Dell, supra, at 391,

> that a plan proposed under Chapter XIII which does not provide for assumption of executory contracts by the trustee or otherwise make provision for the payment of the claims of secured creditors according to the terms of the instrument creating the debt, does deal with such claims. A plan without such provisions should not be confirmed unless accepted by the secured creditors.

It follows that petitioner's written acceptance was a prerequisite to confirmation

12. The cases of In re Wilder, 225 F. Supp. 67 (M.D.Ga.1963) and In re Duncan, 33 F.Supp. 997 (E.D.Va.1940), also cited by the trustee, are similarly distinguishable from the instant case. In each of those cases the plan provided for current payments to the secured creditor in accordance with the terms of its contract, and the court also found that the creditor had acquiesced in the debtor's defaults prior to the filing of the plan.

13. Since the procedures being followed by the referee in the administration of Chapter XIII proceedings in this Court have been the subject of continuing controversy, it seems appropriate that this Court make one suggestion for the benefit of the referee and the bar:
No plan should be confirmed by the referee unless it is clear and explicit as to the rights and obligations of both secured and unsecured creditors under it. Implicit

of the plan and the order of confirmation was improperly entered.

 The order of the referee confirming the plan is reversed and the matter is remanded to the referee for further proceedings not inconsistent herewith.[13]

It is so ordered.

in Sections 646(1), (2) and 652(1) of the Act is the thought that creditors, whether secured or unsecured, understand what they are asked to accept. Thus, Section 646(2) clearly contemplates that the debtor in his plan make a proposal as to the manner in which he intends to satisfy his obligation to each of his secured creditors, so that each secured creditor can make an informed decision as to whether or not he is dealt with by the plan, and if he is dealt with by the plan, whether to accept or reject it. See 10 Collier, supra, para. 28.03; The printed form furnished to the debtor and completed by him at the first meeting of creditors in the present case does not, in this Court's view, comply in this respect with Sections 646(2) and 652(1). A plan which appears to satisfy the statutory requirements in this respect is set forth at 10 Collier, supra, Form No. 5004, at p. 1610.