Edward J. CHEETHAM, Debtor,
Appellant,

v.

UNIVERSAL C. I. T. CREDIT CORP.
et al., Appellee.

[In the Matter of Edward J. Cheetham,
Debtor]

No. 7003.

United States Court of Appeals
First Circuit.

March 4, 1968.

George P. Limberis, Bangor, Me., with whom James R. Flaker, Portland, Me., and Richard Barton, Brunswick, Me., were on brief, for appellant.

John J. Flaherty, Portland, Me., with whom Theodore H. Kurtz and Berman, Berman, Wernick & Flaherty, Portland, Me., were on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

This is, in substance, a continuation of the discussion of the rights of secured creditors who refuse to assent to a wage earner plan filed under Chapter XIII of the Bankruptcy Act, 11 U.S.C. §§ 1001–1086, a subject recently undertaken in First Nat'l Bank v. Cope, 1 Cir., 1967, 385 F.2d 404. In that case the secured creditor filed proof of claim and rejected the plan. The referee confirmed the plan, and entered an order that the creditor be paid monthly, but in an amount smaller than that due under its agreement. The creditor thereupon seized the security. We held that the filing of the plan vested jurisdiction over all the debtor's property in the court, and that the creditor even though it may have had a prima facie right to prevail on a petition for reclamation, was obliged to take that course and could not exercise self-help.

The present debtor, Cheetham, filed a Chapter XIII petition and accompanying schedules in February 1967. A summary of the plan and other information was mailed to the disclosed creditors and the first meeting set for March 14. On or prior to that date a majority of the unsecured creditors assented to the plan. At the meeting appellee Universal C.I.T. Credit Corporation, hereafter C.I.T., a listed secured creditor, appeared and, asserting its rights under a conditional sales agreement to a vehicle having a listed value approximately double that of the indebtedness secured, proposed to take back the car. While a proposal for such unilateral repossession was not in order, see *Cope,* supra, we pass this over, and note that C.I.T. offered to prove its security, was not allowed to do so, and

rejected the plan.[1] All unsecured creditors having accepted the plan, the referee declared it duly accepted, stating that C.I.T. was not part of the plan and was not affected thereby. Not everything that he said, however, was consistent with this pronouncement. Nor, we feel constrained to say, were some of his remarks judicial and objective. At a later hearing, over C.I.T.'s objection, the plan was confirmed.

On appeal the district court reversed, holding that C.I.T.'s assent was a condition precedent to confirmation. In re Cheetham, D.Me., 1967, 272 F.Supp. 501. The debtor appeals to this court.

The pertinent provisions of the plan were as follows:

"6. *Secured claims:* Nothing is proposed by this plan which may materially and adversely affect the interest of any creditor having a valid security interest in any of the debtor's property. Any secured claim, as proved and allowed, which may be materially and adversely affected, shall not be dealt with by this plan until such time as a written acceptance from such creditor is filed with the Court.

"*a.* Secured claims, as filed, proved and allowed, held by creditors who accept the plan, shall be paid monthly installments and reasonable interest on the secured portion of such claims, in such manner as determined and allowed by the Court. Such monthly installment shall have priority of payment over unsecured and priority claims other than costs of administration.

"*b.* Payment to non-assenting secured creditors may be made by the trustee in such manner as may be permitted under the law, without regard to any other provision of this plan. Such claims, as proved and allowed, shall have priority of payment over the unsecured and priority claims, other than costs of administration, in such manner and amounts as determined by the Court.

"7. On and after the filing of the petition for a wage earner's plan under Chapter XIII of the Bankruptcy Act, the Court shall have jurisdiction of the debtor and his property and his entire future earnings and wages for all purposes of the plan. Title to the debtor's property shall revest in the debtor upon consummation of this plan or upon the dismissal of these proceedings unless upon such dismissal the debtor consents to adjudication as a bankrupt.

\* \* \* \* \* \*

"9. The Court may from time to time during the period of extension increase or reduce the amount of any of the installment payments provided by the plan, or extend or shorten the time for any such payments, where it shall be made to appear, after hearing upon such notice as the Court may designate, that the circumstances of the debtor so warrant or require \* \* \*."

The order confirming the plan contained the following additional provisions.

"4. That said trustee shall deposit all moneys in a duly designated depository for federal funds and make all disbursements as soon as sufficient funds become available by check, signed by him and countersigned by the judge or

1. At one point the referee stated that if C.I.T. wished to object to the confirmation of the plan, it must do so "in writing with a $10.00 fee." This was error. If C.I.T. was, as a secured creditor, covered by the plan, the burden of obtaining C.I.T.'s written assent was on the debtor. If it was not covered, it could have no standing, so far as we presently conceive, to object to confirmation. Whether, had there been a dispute as to its being a secured creditor, which there was not, C.I.T. would have been obligated to file a proof of claim is a question we need not reach. Cf. Interstate Fin. Corp. v. Scrogham, 6 Cir., 1959, 265 F.2d 889, 892. We do suggest, however, that a secured creditor attending a first meeting should at least be prepared to make evidentiary proof, regardless of the listing by the debtor. C.I.T. was so prepared.

referee in bankruptcy, in the following order:

(a) Costs of administration pursuant to provisions of Section 659(1), (2), (3), (4) and (5) of the Bankruptcy Act. The trustee must at all times retain sufficient funds to pay all accrued costs of administration before making any other disbursements as provided in this order.

(b) Monthly installments and reasonable interest to the assenting secured creditors on the secured portion of such claims, in such manner as determined and allowed by the Court, as follows:

| Creditor | Value of Security | Interest or F/C | Total Secured Dividend | Monthly Payment |
|---|---|---|---|---|
| Beneficial Finance Co. (Maine) | $ 50.00 | $2.00 | $ 52.00 | $5.00 |
| Guardian Loan Co. | 100.00 | 4.00 | 104.00 | 8.00 |

(c) Monthly installments to properly perfected and established non-assenting secured claims in such manner as may be approved or allowed by this Court."

The sole question, as we see it, is whether in these circumstances C.I.T.'s claim was "dealt with by the plan." Bankruptcy Act, § 652(1), 11 U.S.C. § 1052(1).[2] The district court, accepting for present purposes the referee's view that "dealt with" is synonymous with "affected" as the latter term is defined in section 607, 11 U.S.C. § 1007,[3] relied on the following points in concluding that petitioner's claim was "dealt with" by the plan: costs of administration and claims of assenting secured creditors had priority over claims of non-assenting secured creditors; non-assenting secured creditors would receive payment only after their claims were "perfected and established," and then only "in such manner as may be proved or allowed" by the court; and payments could be temporarily reduced or suspended by the court without notice to creditors. In sum, no provision was made for payment to C.I.T. in accordance with the terms of its contract. In addition, any action C.I.T. might bring would have to be in the bankruptcy court, and other provisions of the Act, sections 611, 614, 657, and 658 (11 U.S.C. §§ 1011, 1014, 1057, 1058) limited its freedom, both to bring suit and to enforce its lien.

We think the court erred in its construction of the plan and in its reference to provisions of the Act which are operative in connection with any wage earner proceeding. With respect to the plan itself, we think the court may well have been misled by certain comments of the referee. As to these, we need only say that the plan must speak for itself, and that under it the referee did not possess

2. A plan which does not receive unanimous acceptance may not be confirmed until,

"(1) it has been accepted in writing, if unsecured creditors are affected by the plan, by a majority in number of all such creditors whose claims have been proved and allowed before the conclusion of the meeting, which number shall represent a majority in amount of such claims, *and by the secured creditors whose claims are dealt with by the plan * * *.*" (Emphasis added.)

3. "Sec. 607. A creditor shall be deemed to be 'affected' by a plan only if his interest shall be materially and adversely affected thereby. * * *"

certain restricting rights which he orally asserted.

In our opinion the plan, on its face, did not "deal with" petitioner's claim. It is true that under the plan the trustee possibly could not, and certainly need not, make payments to petitioner in the full amounts due. On the other hand, no provision of the plan purported to restrict the contractual rights of a non-assenting secured creditor, who, if he does not receive from the trustee, the debtor, or both, payments as called for by his contract, or payments otherwise satisfactory to him, may proceed against his security. Paragraph 6 expressly denied such intent. Particularly in the light of this declaration, we read paragraph 6b as merely permissive language authorizing discretionary payments to non-assenting secured creditors out of funds paid into the plan. Rather than a limitation on the claim, it is merely a statement advising the unsecured creditors that there may be made, ahead of them, payments to non-assenting secured creditors. That a trustee may have such power in any event, does not mean that it was not desirable to make it evident to unsecured creditors asked to assent to the plan. The alternative circumstance, that the trustee may conclude not to pay some secured creditor, does not mean that its claim is restricted by the plan, or that the creditor cannot, in such case, proceed fully against the security.[4] Since it was free to do this, we do not think it was dealt with.

In going outside the plan and finding in the limitations imposed on a non-assenting creditor's freedom by sections 611, 614, 657, and 658 of the Act added reasons for concluding that petitioner was "dealt with," the court also erred. Were the potential restraints of these sections to constitute "dealing with," every secured creditor would be dealt with except those whose claims were fully provided for in the plan. This would seem precisely contrary to section 646(2), which expressly makes dealing with secured creditors optional, providing that a plan " * * * may include provisions dealing with secured debts severally, upon any terms." The court's interpretation, requiring the consent of every secured creditor who is not expressly designated for full payment by the trustee, gives each secured creditor a whip hand. All must assent except those who would have no reason to dissent; in consequence, the only plans that can be approved are those which expressly undertake to pay non-assenting secured creditors in full. We do not believe this to have been Congress' intention.[5]

4. We do not agree with the case of In re Pappas, S.D.Ohio, 1962, 216 F.Supp. 819, relied on by the district court. There the Order of Confirmation provided that a rejecting secured creditor "shall not be dealt with by the plan, and said secured creditor should be, and is, hereby granted leave to file a reclamation petition * * *." The plan elsewhere provided, "Payments of 50% should be made to all secured creditors and payments of 50% to all unsecured creditors until both are paid in full. * * *" The court held that since the secured creditors were to be paid only "50% of the funds received by the trustee," 216 F.Supp. at 822, a rejecting secured creditor was dealt with by the plan and must assent before it could be confirmed. We cannot agree with the court's interpretation. If, however, the proper reading of the plan could be that on the reclamation petition the rejecting creditor would be limited to 50%, the court's conclusion was clearly correct.

5. Because it is so often cited we might say a word here about In re O'Dell, D.Kan., 1961, 198 F.Supp. 389, also relied on by the district court. There secured creditors, under their contracts, were entitled to a total of $38.66 a week. The plan provided that the debtor should pay in to the trustee $37.00 a week, with the trustee paying first such secured creditors as assented to the plan, and disbursing the balance to the unsecured creditors. No provision was made with respect to non-assenting secured creditors. The court pointed out that if all secured creditors assented they could not be paid in full. It pointed out, further, that under section 614 of the Act the referee could prevent the enforcement of liens during the pendency of the plan. "Under these circumstances, it is unrealistic to say that its [the secured creditor who rejected the plan] claim is not 'dealt with by the plan.'" 198 F.Supp. at 391. The court,

If Chapter XIII is to serve any real purpose where there are secured creditors, section 652 must be read as written, to require assent only of those "whose claims are dealt with," meaning expressly adversely dealt with. Irrespective of what general inconveniences may occur to non-assenting secured creditors as a result of Chapter XIII proceedings,[6] we hold that secured claims are dealt with only when the plan expressly limits the amount recoverable on the claim, or restricts the creditor's security interest. In this respect, we are in full agreement with the court in Hallenbeck v. Penn Mut. Ins. Co., 4 Cir., 1963, 323 F.2d 566, 572, where it said, in connection with a Chapter XIII plan,

"[T]he granting of the injunction [restraining foreclosure] must not directly or indirectly impair the security of the lien; and * * * the owner of the secured indebtedness must not be required to accept less than the full periodic payments specified in his contract."

We do not believe section 652 is meant to be more rigidly interpreted, or that it is necessary to do so.[7]

The order of the District Court is reversed and the case remanded for further proceedings not inconsistent herewith.

accordingly, held that the plan could not be confirmed.

We do not agree with this reasoning. Of course, if all of the secured creditors assented, they would then be dealt with by the plan, and it was doubtless implicit that they could not take the $37 and at the same time proceed against the security for the balance. Section 614 would then become applicable. However, by hypothesis, they had assented, and could have no complaint. While it was implicit that no current earnings would be paid to a non-assenting secured creditor, there was nothing in the plan purporting to reduce or limit the amount of the claim of such a creditor, or to prevent his proceeding against his security. What the court was saying was that because a general provision in the Act might empower the referee to prevent such recourse, "realistically" the claim was dealt with in the plan. Not only did this inevitably produce the unfortunate, and we believe unnecessary, holding that no plan can be confirmed over the objection of a secured creditor who is not to be fully recognized in his pursuit of income as well as against the security, but it did so by the paradoxical reasoning that a claim was "dealt with by the plan" precisely because it was not dealt with. The court made the wrong choice. Its duty was to confirm the plan, and then limit appropriately, for the protection of the non-dealt-with creditor, the use of the powers given the trustee by section 614.

6. In addition to our *Cope* case, supra, as an example of what a non-assenting secured creditor must tolerate, we note the general equity principle illustrated by In re Lane Foods, Inc., S.D.N.Y., 1963, 213 F.Supp. 133, applied in Chapter XIII cases such as In re Pizzolato II, W.D. Ark., 1967, 268 F.Supp. 353; In re Rutledge, E.D.Ark., 1967, 277 F.Supp. 933; In re Pizzolato I, W.D.Ark., 1967, 268 F. Supp. 353; In re Wilder, M.D.Ga., 1963, 225 F.Supp. 67; In re Duncan, E.D.Va., 1940, 33 F.Supp. 997. Cf. In re Clevenger, 7 Cir., 1960, 282 F.2d 756; In re Garrett, N.D.Ala., 1962, 203 F.Supp. 459. We do not presently decide to what extent we may agree with these cases beyond *Rutledge*.

7. It is manifest from the legislative history that the provision in section 652 presently under discussion was inserted to avoid constitutional questions. H.R.Rep. No. 1409, 75th Cong., 1st Sess. 54 (1937), *incorporated by reference in* S.Rep. No. 1916, 75th Cong., 3d Sess. 18 (1938). We see none in our present decision.