In the Matter of Thomas W. Thompson,
Debtor.

Thomas W. THOMPSON, Appellant,

v.

FORD MOTOR CREDIT COMPANY,
Appellee.

No. 72-3553

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

April 4, 1973.

---

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

L. Zack Dozier, Macon, Ga., for appellant.

E. J. Harrell, Macon, Ga., for appellee.

Before WISDOM, AINSWORTH and CLARK, Circuit Judges.

WISDOM, Circuit Judge:

On December 8, 1971, Thomas W. Thompson filed a petition in federal district court under Chapter XIII of the Bankruptcy Act to pay his debts through a wage earner plan. After the court issued notice to creditors, Ford Motor Credit Company [Ford], a secured creditor to whom Thompson was indebted for payments owing on a 1970 Ford Mustang, filed a secured proof of claim rejecting the proposed plan. At the first meeting of creditors the plan was confirmed over Ford's objection. The plan provided for payments to Ford of $22.90 per week, equivalent to the rate specified in the original sales contract, and enjoined Ford from foreclosing on the car. On July 6, 1972, Ford filed a petition to reclaim the car, alleging that Thompson had failed to make payments in the amount specified by the plan. After a hearing before the referee in bankruptcy, the referee denied Ford's petition and also denied Ford's oral motion to dismiss the plan. On Ford's petition for review the district court reversed the referee's decision and remanded to the referee with directions to grant the reclamation petition. Thompson appeals from the district court's decision. We reverse and remand the case with instructions to the referee to amend the plan.

After confirmation of a Chapter XIII plan, a bankruptcy court may in appropriate circumstances permit a secured creditor who has rejected the plan to reclaim its property from a defaulting debtor.[1]  Cheetham v. Universal C.I.T. Credit Corp., 1 Cir. 1968, 390 F.2d 234; In re Clevenger, 7 Cir. 1960, 282 F.2d 756, 757; In re Copes, 1962, D. Kan., 206 F.Supp. 329; In re Duncan, 1940, E.D. Va., 33 F.Supp. 997; Comment, Relief for the Wage-Earning Debtor: Chapter XIII, or Private Debt Adjustment?, 55 Nw.U.L.Rev. 372, 376 (1960).  The exercise of the power to restrain or permit foreclosure is within the sound discretion of the referee.  Hallenbeck v. Penn Mutual Life Ins. Co., 4 Cir. 1963, 323 F.2d 566, 573–574.  The referee may properly deny reclamation in the following circumstances.  (1) General equitable con-

---

[1]. It is less clear whether a secured creditor who *accepts* a Chapter XIII plan may seek reclamation in event of default by the debtor after confirmation. See Copenhaver, Chapter XIII, Wage Earner's Plan, in Proceedings of Fourth Seminar for Referees in Bankruptcy 279, 299 (1967); 10 Collier on Bankruptcy ¶ 29.-03, at 332 (14th ed. 1970); 1A Collier Bankruptcy Manual ¶ XIII–9.03 (1970). That question is not at issue in this case, since Ford rejected the plan.

siderations, including the debtor's good faith and ability to pay,[2] should favor restraining foreclosure. (2) The injunction against foreclosure must be necessary to preserve the debtor's estate or carry out the Chapter XIII plan. (3) The injunction must not impair the security of the lien. (4) The owner of the secured indebtedness must not be required to accept less than the full periodic payments specified in the contract. Hallenbeck v. Penn Mutual Life Ins. Co., *supra*, 323 F.2d at 572; Cheetham v. Universal C.I.T. Credit Corp., *supra*, 390 F.2d at 238.

■■ Equitable considerations strongly suggest that foreclosure would be improper in this case. Thompson fell behind in payments not because of any lack of good faith on his part, but because of circumstances beyond his control. His default appears to have been due to an injury which prevented him from working and to his being temporarily put on a part-time schedule by his employer.[3] During the period of his incapacity Thompson regularly submitted his disability check to the trustee. At present Thompson is still employed, and earns enough to cover payments under the plan.

Foreclosure would seriously threaten Thompson's ability to make payments under the Chapter XIII plan. Loss of the car would endanger his employment. His job requires him to be at work at 6:00 A. M., and the car is his only means for getting to work at that hour. See In re Rutledge, 1967, E.D.Ark., 277 F. Supp. 933, 936. Thompson's other creditors have a substantial stake in the success of the Chapter XIII plan. Though Ford is Thompson's largest single creditor, his total debts to his other secured and unsecured creditors exceed his debt to Ford. While foreclosure would make Ford whole, it would effectively destroy any hope that Thompson might be able to repay these other creditors. *Cf.* In re Garrett, 1962, N.D.Ala., 203 F.Supp. 459, 461.

Thompson's default has not been so substantial as to impair Ford's security. Ford alleged in its reclamation petition that it had been paid only $82.44 under the plan, instead of the $517 which it should have received. Shortly after the petition was filed, however, Ford was paid an additional $91.60. At the time of the hearing, then, Ford had received $174.04. This sum roughly covered the depreciation on the car, approximately $200 since confirmation of the plan. We do not regard it as of controlling importance that part of this payment was made after Ford filed its petition. When the referee considered this case Ford's economic position was fundamentally no worse than when the plan was confirmed.

■ Ford is not required by the plan to surrender any essential rights under its contract. The plan contemplates payment at the contract rate. At worst Thompson's default will work some delay in the time required for full payment. In light of all the circumstances in this case, including Thompson's good faith, the interests of the other creditors, and the fact that Ford's security has not been seriously impaired, we do not view this potential delay as substantial enough to require immediate foreclosure. See In re Clevenger, 7 Cir. 1960, 282 F.2d 756, 757; In re Pizzolato, 1967, W.D.Ark., 268 F.Supp. 353, 356.

■ We do not suggest that Thompson is free to make reduced payments

2. See also In re Pizzolato, 1967, W.D.Ark., 268 F.Supp. 353; In re Wilder, 1963, M.D.Ga., 225 F.Supp. 67, 69.

3. Under § 661 of the Bankruptcy Act a debtor may be discharged after three years even if payments under the plan are not complete, if the failure to complete payment is due to circumstances for which the debtor cannot be justly held account-able. 11 U.S.C. § 1061. The requisite circumstances include loss of employment because of illness or other reasons beyond the debtor's control. 10 Collier on Bankruptcy ¶ 29.11, at 355 (14th ed. 1970); Comment, Relief for the Wage-Earning Debtor: Chapter XIII, or Private Debt Adjustment?, 55 Nw.U.L.Rev. 372, 375 n. 26 (1960).

for the indefinite future. Ford should be entitled to reclaim if Thompson continues to fall behind in payments without substantial justification,[4] and if the economic injury to Ford from the delay in payment or impairment of its security grows greater in comparison to the interest of the other creditors in continuation of the plan. To ensure that Ford will receive payment within a reasonable time, we remand the case with instructions to the referee to amend the plan by specifying a date for bringing delinquent payments current. But on the record before us we hold that the referee was within his sound discretion in refusing reclamation.

The judgment of the district court is reversed, and the case is remanded with instructions to the referee to amend the plan in accordance with this opinion.

---

4. Ford asserts in its brief that Thompson has fallen further behind in his payments since the filing of Ford's petition. There is nothing in the record on this appeal to substantiate this assertion, however. And it appears from the record that Thompson has been hospitalized during part of this time.