**In re Gerald Wayne RUTLEDGE, Debtor.**

**No. LR–66–B–428.**

United States District Court
E. D. Arkansas, W. D.

Aug. 8, 1967.

John Langston, Little Rock, Ark., for debtor.

Isaac A. Scott, Jr., Little Rock, Ark., for petitioner, Worthen.

## MEMORANDUM OPINION

GORDON E. YOUNG, District Judge.

This cause is before the Court on a petition for review filed by Worthen Bank & Trust Company of Little Rock, Arkansas. On November 9, 1966, Gerald W. Rutledge (debtor hereinafter), filed a petition seeking an extension of time to pay his debts pursuant to Chapter XIII of the Bankruptcy Act, 11 U.S. C.A. §§ 1001–1086. Filed with this petition was debtor's plan in which Worthen Bank & Trust Company (Worthen hereinafter) was listed as a secured creditor in that it had a lien upon a 1966 Pontiac automobile. (Worthen also had a lien on other property which is not involved here since the Referee allowed Worthen to replevy it.)

The first meeting of creditors was held in Little Rock on November 30, 1966, but this meeting was continued until December 12, 1966, to give counsel for the parties opportunity to confer and reach an agreement on their differences. This agreement did not materialize and on December 9, 1966, Worthen filed a petition setting out its various liens on different property, the amount of money owed by debtor to Worthen, the fact that debtor was behind in his payments, and that debtor's plan was unreasonable and did not provide for bringing the back payments current. It rejected the plan and asked that the Court "dismiss the plan of the debtor, or in the alternative, that the security be abandoned and the petitioner be permitted to replevin its security."

A hearing on Worthen's petition was held on December 12, 1966. Appearing at this hearing were the debtor and his attorney, an attorney for Worthen, and A. L. Tenny, Trustee. (The debtor is a disabled war veteran and receives disability payments.) During the course of the hearing the Referee stated that he had been informed that the debtor was starting to business school and would receive around $170 per month additional pay, or a total tax free monthly income of $487.90. Also, an amended plan had been filed after Worthen's petition rejecting the plan wherein the debtor would pay Worthen $116.89 per month or the total payment due on the lien each month as it fell due. All delinquent payments were to be brought current within a "reasonable length of time." The other property on which Worthen held liens was abandoned and allowed to be replevied. At the close of the hearing the Referee found that since the amended plan provided for paying Worthen its full contract price, making future monthly payments as they became due, and payment of the delinquent or past due payments within a reasonable length of time, the plan would be approved by the Referee. He entered an order denying and dismissing Worthen's petition and

it is of this order that Worthen now seeks review by this Court.

█ It appears to the Court that the first and foremost question to be answered by this review is whether or not the Referee erred in approving the debtor's plan over the objection of a secured creditor. It is well settled that if a secured creditor is "dealt with" by the plan, he must accept the plan before it can be properly confirmed. Interstate Finance Corporation v. Scrogham, 265 F.2d 889 (6 Cir. 1959). In In Re O'Dell, D.C., 198 F.Supp. 389 at 390–391, the Court, quoting from the Bankruptcy Act, said:

"A wage earner plan 'may include provisions dealing with secured debts severally, upon any terms' (§ 646(2)). * * * An application for the confirmation of a wage earner plan may be filed with the court after it has been accepted by the requisite majority of unsecured creditors 'and by the secured creditors whose claims are dealt with by the plan' (§ 652(1)). A wage earner plan shall be confirmed by the court if the court is satisfied that the provisions of Chapter XIII have been complied with (§ 656 Sub. a(1)). It follows from these provisions that a wage earner plan which deals with a secured creditor cannot be confirmed unless a written acceptance is obtained from that secured creditor. (9 Collier on Bankruptcy, 14th Edition, ¶¶ 28.04, 29.01, 29.02)."

█ Thus, since Worthen, a secured creditor, did not accept the plan and, in fact, specifically rejected it, the question now is, was Worthen "dealt with" by the plan. We hold that it was. There are very few cases dealing with this precise point. In In Re Pappas, 216 F.Supp. 819 (S.D.Ohio W.D.1962) the plan called for a 50% reduction in the monthly payments to the secured creditor, and the Court held that this obviously dealt with the creditor. However, in In Re O'Dell, supra, the contract provided for payments of $38.88 a week and the plan provided that the creditor be

paid $37.00 a week. In holding that the plan dealt with the creditor, the Court said:

"It is my opinion that a plan proposed under Chapter XIII which does not provide for assumption of executory contracts by the trustee or otherwise make provision for the payment of the claims of secured creditors according to the terms of the instrument creating the debt, does deal with such claims. A plan without such provisions should not be confirmed unless accepted by the secured creditors."

In the case at bar, the plan provides for payment of the full contract price, but it only provides that the delinquent payments be brought current within a "reasonable length of time." The plan does not provide for any specific time limitation for bringing these payments current. This, in effect, gives the debtor an extension of a portion of his debt for an indefinite period. When the time for payment is extended, this varies the contract from what the parties have agreed on. Thus, we feel that Worthen's debt was "dealt with" by this plan of payment. Granted that perhaps Worthen has not been materially affected, but this is not the test set out by Congress. The test which is set out by the Act and which must be followed by this Court is whether the secured creditor is "dealt with." The Court feels that Worthen's claim was "dealt with" and, therefore, the Referee was in error in requiring Worthen to participate in the wage earner's plan as a method of payment of its debt.

■■ However, this does not mean that the Referee is required to allow reclamation of the automobile. The Referee still has the power to enjoin any foreclosure or reclamation by Worthen during the period of consummation of the plan. Section 611 of the Bankruptcy Act provides:

"Where not inconsistent with the provisions of this chapter, the court in which the petition is filed shall, for the purposes of this chapter, have exclusive jurisdiction of the debtor and his property, wherever located, and of his earnings and wages during the period of consummation of the plan."

Also, in § 614 of the Act, it is provided that:

"The court may, in addition to the relief provided * * * elsewhere under this chapter * * * enjoin or stay until final decree any act or the commencement or continuation of any proceeding to enforce any lien upon the property of a debtor."

From these sections of the Act, it appears that the Referee has exclusive jurisdiction over all of the debtor's property, real and personal, during the entire period of consummation of the plan, and is specifically invested with jurisdiction to stay any proceedings to enforce a lien upon the debtor's property. See Hallenbeck v. Penn Mutual Life Insurance Company, 323 F.2d 566 (4 Cir. 1963), and In Re Garrett, 203 F.Supp. 459 (D.C. Ala.1962). The sole criterion of jurisdiction for such injunction is that the lien be "upon property of the debtor." Of course, the question of whether or not the injunction should be issued is left to the sound discretion of the Referee. But, as was said in Hallenbeck v. Penn Mutual Life Insurance Company, supra, "It is our further conclusion that the exercise of such power [the power to grant an injunction] lies within the sound, rather than the absolute, discretion of the Referee and if such discretion has been abused the action of the Referee in that regard should not be upheld." Some courts have set out guidelines for the Referee to follow, or conditions to be met before such an injunction is issued. In the *Hallenbeck* case, 323 F.2d at 572, the court said:

"Bearing in mind the general purposes and provisions of Chapter XIII, it would appear that, in addition to usual equitable considerations, including debtor's good faith in submitting a plan and ability to perform it, at least three conditions should be met before this injunctive power may be exercised: (1) The injunction or stay must

be necessary to preserve the debtor's estate or to carry out the Chapter XIII plan; (2) the granting of the injunction must not directly or indirectly impair the security of the lien; and (3) the owner of the secured indebtedness must not be required to accept less than the full periodic payments specified in his contract.".

In this same connection, see also In Re Garrett, 203 F.Supp. 459 (D.C.Ala.1962); In Re Duncan, 33 F.Supp. 997 (E.D.Va. 1940); In Re Tracy, 194 F.Supp. 293 (N.D.Cal.1961).

 In the case at bar, the Referee has determined that the automobile is necessary for the success of the plan. This Court cannot say that such a ruling is clearly erroneous. In today's world, with its added emphasis on transportation, we cannot say that an automobile is not necessary for a disabled person to go about his daily functions, whether that be attending school, visiting hospitals for care, or any necessary functions of daily living. It is true that the value of the automobile is declining as time goes on. However, the fact that the injunction is in force does nothing to increase this decline and does nothing to impair the security of the lien which would not ordinarily occur.

This Court does feel, however, that in situations such as this the lienholder who entered into a contract to secure his lien should receive the full contract value of his lien if he is being restrained from regaining or taking control of the security. Although this plan does make provision for the full payment of the contract price of the lien, it sets out no specific provisions for the payment of the delinquent payment. We feel that the provision providing that the delinquencies be brought current within a reasonable length of time is too vague and inadequate. Before entering an injunction, the Referee should take steps to see that any delinquent payments are brought current within a specific set amount of time. In the case at bar, since it has been pending before this Court for some time due to administrative and judicial delays, we feel that 30 days from the date of issuance of this opinion will be an adequate and reasonable time for the delinquent payments to be brought current.

Therefore, this case will be remanded to the Referee so that the plan may be amended so as not to include Worthen in its provisions, and so that the conditions for maintaining an injunction as set forth in this opinion can be met or the injunction dissolved.