**LLOYD WOOD CONSTRUCTION COM-PANY, Inc., a corporation, Plaintiff,**

v.

**Hilary J. SANDOVAL, Administrator, Small Business Adm., Robert C. Seamans, Jr., Secretary of the Air Force, Department of the Air Force, T/Sgt. Jack A. Sockoch, Contracting Officer, Eglin Air Force Base, Florida, and United States of America, Defendants.**

**Civ. A. No. 70–426.**

United States District Court,
N. D. Alabama, W. D.

Aug. 13, 1970.

Zeanah, Donald & Lee, Tuscaloosa, Ala., for plaintiff.

U. S. Atty. Wayman G. Sherrer, Asst. U. S. Atty. B. Don Hale, Birmingham, Ala., Smith, Currie & Hancock, Atlanta, Ga., for defendants.

## MEMORANDUM OPINION

McFADDEN, District Judge.

Plaintiff, an Alabama corporation engaged in the general construction business, seeks declaratory and injunctive re-

lief against the defendants in connection with a federal government construction procurement, and bases jurisdiction on 5 U.S.C. §§ 701–706, 28 U.S.C. § 2201, and 15 U.S.C. § 634(b) (1).

Defendant Hilary J. Sandoval is the Administrator of the Small Business Administration, an agency of the federal government. Defendant Robert C. Seamans, Jr., is the Secretary of the United States Air Force. Defendant T/Sgt. Jack A. Sockoch was the contracting officer at Eglin Air Force Base. Since the commencement of this action he has been transferred to Southeast Asia and has been succeeded by T/Sgt. Robert C. Hoffman who has been substituted as a party defendant by stipulation of the parties.

The Air Force issued an invitation for bid for the construction of a 300-unit Family Housing Project at Eglin Air Force Base, Florida, Project No. AF–70–141–5. The invitation specified that the project had been set aside for bidding and construction by small-business concerns in *accordance with the Small Business Act*, 15 U.S.C. § 631 et seq.

Plaintiff and others submitted bids in response to the invitation. M. Dyson Building Company, Inc. was the lowest bidder; Allen M. Campbell Company was the second lowest bidder; and plaintiff was the third lowest bidder. Plaintiff protested the award to either Dyson or Campbell on the ground that neither was a small-business as defined by law and that it therefore was the lowest qualified bidder. The Air Force submitted this protest to the Small Business Administration which determined that Dyson was not a small-business but that Campbell was. The determination with respect to Campbell was appealed to the Size Appeals Board of the Small Business Administration which affirmed the area administrator's determination. In doing so, the Size Appeals Board held that Allen M. Campbell was an affiliate of Gordon Campbell & Associates, but that the two firms combined still qualified as a small-business. Based on this determination, the Air Force tendered a contract to Campbell who signed and returned it. Prior to signature by the Air Force, this action was commenced and this Court entered a temporary restraining order against the execution thereof.

Allen Campbell was allowed to intervene as a party defendant and the matter came on for a hearing.

A hearing was held on defendants' motion to dismiss, and motion to dissolve the temporary restraining order, and on the Government's and plaintiff's cross-motions for summary judgment. These motions were overruled and the Court received evidence from both parties at the conclusion of which defendants' motions to dismiss were renewed.

The thrust of plaintiff's complaint is that Campbell is not a small-business because that determination was made by the SBA on the basis of a completed contract method of accounting whereas, it contends, the percentage of completion or cash receipts basis of accounting is the only appropriate method for determining size under the SBA regulations. Plaintiff further contends that even if the completed contract method of accounting is used, the determination is in error because it does not include the proceeds of a contract which was, according to plaintiff, substantially complete at the close of the last preceding fiscal year and omits still another contract performed by Gordon Campbell & Associates.

Defendants contend that the case is due to be dismissed on several grounds:

(1) The plaintiff does not have standing to sue.

(2) The SBA cannot be sued.

(3) The decision of the SBA is conclusive and cannot be reviewed.

(4) If the decision of the SBA is to be reviewed, it must be reviewed on the record before SBA and can be set aside only if it is arbitrary, capricious, erroneous as a matter of law, in excess of statutory authority, or not supported by substantial evidence.

"Standing has been called one of the most amorphous concepts in the entire domain of the public law. That this

statement is undoubtedly true is evidenced by the mental gymnastics through which the courts have passed in determining standing issues." Scanwell Laboratories, Inc. v. Shaffer, 137 U.S.App.D.C. 371, 424 F.2d 859, 861 (1970). Nevertheless, let us begin.

Defendants' assertion that plaintiff has no standing to sue is based principally on Perkins v. Lukens Steel Co., 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940). That case held that individual manufacturers had no standing to sue for court review of minimum wage determinations made by the Secretary of Labor under the Walsh-Healy Public Contracts Act. This suit was based on the contention that the determinations by the Secretary resulted from an erroneous statutory interpretation. The Court held that the statute requiring award of contracts by formal advertising was not enacted for the protection of sellers and conferred no enforceable rights on prospective bidders. The Court further held that to have standing, persons must show an injury or threat to a right of their own as distinguished from the public's interest in the administration of the law. The Court was there concerned with the prospect of judicial interference with the orderly procurement process which could seriously hamper the executive branch in carrying out its assigned function of implementing national policies. The Court put it this way:

> * * * Courts should not, where Congress has not done so, subject purchasing agencies of Government to the delays necessarily incident to judicial scrutiny at the instance of potential sellers, * * * A like restraint applied to purchasing by private business would be widely condemned as an intolerable business handicap. It is, * * * essential to the even and expeditious functioning of Government that the administration of the purchasing machinery be unhampered. * * *
>
> [310 U.S. 113, 130, 60 S.Ct. 869, 878 (1940)]

Courts have long used *Perkins* as ground for denying a forum for protests from unsuccessful bidders for Government contracts. The validity of this rule has been cast into serious doubt by recent cases.

Scanwell Laboratories, Inc. v. Shaffer, supra, held that an unsuccessful bidder did have the right to bring a declaratory judgment action to review agency action. The Court took the position that the Supreme Court has departed from the legal right doctrine and developed a standard to provide a remedy for legitimate grievances where the person suing asserts a position which protected a public rather than a specific private interest. The Court was further of the view that the basic approach of the Supreme Court had been reversed by Congress in an amendment to the Walsh-Healy Act.

Plaintiff herein espouses the same view and contends that Congress in the Fulbright Amendment to the Walsh-Healy Act in 1952 overruled *Perkins* when it enacted the following language:

> * * * [a]ny interested person should have the right of judicial review of any legal question which might otherwise be raised, including, but not limited to, wage determinations * * *

41 U.S.C. § 43a (c).

The Court of Claims in Keco Industries, Inc. v. United States, 428 F.2d 1233 (Ct.Cl., 1970), held that an unsuccessful bidder had standing to sue. The Court based its decision partly on *Scanwell* and said, at p. 1237:

> We feel that, as a result of *Scanwell*, a party, who can make a prima facie showing of arbitrary and capricious action on the part of the Government in the handling of a bid situation, does have standing to sue. * * *

The Court went on to say, at p. 1237:

> * * * [W]e find that *Heyer* [Heyer Products Co. v. United States, 140 F.Supp. 409, 135 Ct.Cl. 63 (1956)] stated a broad general rule which is that every bidder has the right to have his bid honestly considered by the Government, and if this obligation is breached, then the injured party has the right to come into court to try and

prove his cause of action. Thus, even without *Scanwell*, we feel that plaintiff should be allowed to maintain this action based on the decision in *Heyer*.

Without trying to guess what the Supreme Court will do or attempting to reconcile *Scanwell* and *Perkins*, it seems there are features which distinguish this case from *Perkins*.

The Small Business Administration was created to implement a public policy of aiding small-business concerns. One of the methods used was to set aside certain federal procurement for small-business. The policy can only be carried out if the procurement is in fact given to concerns which are small as defined by the Act and the regulations. It would seem therefore that a small-business concern has a right under the Small Business Act and regulations that was not present in *Perkins*, supra. *Perkins* held that the statute therein was for the Government's benefit and conferred no enforceable right upon prospective bidders. It further held that the Government's agent, the Secretary of Labor, was responsible solely to his principal for erroneous construction of his instructions because, it reasoned, that these instructions were given for the sole benefit of that principal.

■ The legislation here was for the benefit of the small-business concern and it would appear that whether the legal interest test of *Perkins* or the public interest test of *Scanwell* is used a small business concern such as plaintiff here has standing to sue.

The District Courts of Hawaii and Missouri had no problem with this question in American Electric Co. v. United States, 270 F.Supp. 689 (D.Hawaii, 1967), and Springfield White Castle v. Foley, 230 F.Supp. 77 (W.D.Mo., 1964). These Courts held that they had jurisdiction under the Small Business Act which permitted the Administrator to be sued, 15 U.S.C. § 634, and under the Administrative Procedure Act, 5 U.S.C. § 1009. Both of these cases involved size determinations by the Small Business Administration.

■ The Court is of the opinion that plaintiff has the requisite standing and defendants' motions on that ground are due to be overruled. This does not mean to suggest that such a plaintiff has the right to have the contract awarded to it since the Government may decline to do so for other reasons not at issue here.

The Government agency defendants contend that the case cannot be maintained because the United States must consent to suit, and no consent has been given for injunctive relief against the Administrator and consequently any agency acting to further the purpose and objectives of the Administrator in carrying out the Act.

■ The United States must give its consent in order to be sued. United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888 (1940); Minnesota v. United States, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235 (1939). This is true even though the suit is nominally against an officer where the relief sought would actually be against the Government. Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949).

■ The Small Business Act authorizes the Administrator to sue and permits him to be sued, but specifically provides that "no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Administrator or his property;" 15 U.S.C. § 634(b) (1). This language is simple, plain and direct, and leaves no doubt that Congress has not granted a waiver of immunity as to injunction suits. United States v. Mel's Lockers, Inc., 346 F.2d 168 (10th Cir. 1965); Vincent v. Small Business Administration, 402 F.2d 769 (4th Cir. 1968).

Plaintiff attempts to overcome this proscription by relying on the Administrative Procedure Act and its provisions for issuance of process to postpone the effective date of agency action or to preserve status or rights pending conclusion of review proceedings in order

to prevent irreparable injury. 5 U.S.C. § 705.

■ The Court is of the opinion that the Administrative Procedure Act does not override the express language of the Small Business Act and the Administrator is not subject to injunction. It is true that the Administrator has not been enjoined, but merely the Air Force contracting officer. Defendants claim this is doing by indirection what cannot be done directly in that the finding of the Administrator as to size is binding on the Air Force. The Small Business Act, 15 U.S.C. § 637(b) (6) (1958), requires that Government procurement offices "shall accept as conclusive the Administration's determination as to which enterprises are to be designated 'small-business concerns', * * *" Moreover, injunctive relief is not available against the sovereign unless there is a statute authorizing it and here there is none. Larson v. Domestic & Foreign Commerce Corp., supra; Anderson v. United States, 229 F.2d 675 (5th Cir., 1956).

The Court is of the opinion therefore that injunctive relief is not available and that the temporary restraining order is due to be dissolved and plaintiff's prayer for a permanent injunction dismissed. This does not necessarily mean, however, that plaintiff's suit is to be dismissed.

■ Defendants further argue that since the determination of a small business concern is left to the discretion of the Small Business Administration the courts cannot review it. We do not think this discretion is unfettered and it may be reviewed. American Electric Company v. United States, supra; Springfield White Castle Co. v. Foley, supra.

We then reach the question of scope of review of the agency decision.

Plaintiff claims that the Court should set aside the action if it is not in accordance with law or is an abuse of discretion, or is unsupported by substantial evidence or unsupported by the facts to the extent that the facts are subject to trial de novo.

The Government takes the position that the size determination of a small-business has been committed to agency discretion and that absent a direction from Congress the discretion must be left where Congress put it. The Court does not think this is well-taken.

The Small Business Administration is a non-incorporated federal agency, an integral part of the United States Government and charged with the execution and administration of the small-business programs. It is the declared policy of Congress that the Government shall assist small businesses by placing a fair proportion of all Government contracts with them. Small Business Act, 15 U.S.C. § 631 (1958).

■ The Administrator is given the power to make size determinations and this determination must be upheld unless it is arbitrary, capricious, in excess of statutory authority, erroneous as a matter of law, or not supported by substantial evidence. It is not enough that the Court might reach a different result. American Electric Company v. United States, supra; Springfield White Castle v. Foley, supra.

■ There is no question that the Administrator has the power to determine which firms are to be designated as small-business. Small Business Act, 15 U.S.C. § 637(b) (6) (1958). There is no evidence the Administrator has acted capriciously or arbitrarily. His decision therefore must stand unless it is contrary to law or not supported by substantial evidence.

The regulations promulgated by the Small Business Administration define a small-business concern in the construction industry as one which is independently owned, is not dominant in its field and whose average annual receipts for the three preceding years did not exceed $7½ million. SBA chapter 1, 13 C.F.R. § 121.3–8(a) (1) (1970).

The affirmation by the Size Appeals Board that Allen Campbell was a small-business was based on affidavits from Campbell's outside auditors that sales of

the company as reported for federal income tax purposes were less than $7½ million for the three fiscal years ending March 31, 1970.

Campbell reports income for federal tax purposes on the completed contract method. The income from a project is reported only in the year the project is complete although work and progress payments may have covered several years.

Plaintiff contends that this is an inappropriate method for size determination. It is conceded that if a percentage of completion or cash method of accounting is used, Campbell would not qualify as a small-business since its cash receipts for the three preceding fiscal years exceeded an average of $7½ million by a considerable amount.

The SBA regulation governing this question states that a concern bidding for construction work (excluding dredging) is small,

> * * * if its average annual receipts for its preceding three (3) fiscal years do not exceed $7½ million.

13 C.F.R. § 121.3-8(a) (1970).

The regulations also provide:

> "Annual sales and annual receipts" means the annual sales and receipts, less returns and allowances, of a concern and its affiliates during its most recently completed fiscal year.

13 C.F.R. § 121.3-2(b) (1970).

The promulgation of Revision 9 to the SBA Rules & Regulations stated:

> 7. Section 121.3-2(b) has been amended to make it clear that, in determining whether a concern qualifies as a small business under an annual sales or receipts size standards, both sales and receipts must be included.

Rev. 9, 34 F.R. 18585, Nov. 22, 1969.

Defendants contend that all this means is that the receipts and sales as reported for income tax purposes must be included and since the completed contract method is appropriate for tax purposes and has been accepted by the Size Appeals Board it must be accepted by this Court.

The Internal Revenue Service permits the completed contract method of accounting for "long-term contracts" which it defines as "building, installation or construction contracts covering a period in excess of one year from the date of execution of the contract to the date on which the contract is finally completed and accepted." Fed.Tax Reg. § 1.451.3(a) (1969). This method is permitted "provided such method clearly reflects income." Fed.Tax Reg. § 1.451.3(b) (1969). The regulation goes on to permit and define both the percentage of completion and the completed contracts methods, the latter permission being in this language:

> (2) Completed Contract Method. Gross income derived from long-term contracts may be reported for the taxable year in which the contract is finally completed and accepted. Under this method, there shall be deducted from gross income for such year all expenses which are properly allocable to the contract, taking into account any material and supplies charged to the contract but remaining on hand at the time of completion.

Fed.Tax Reg. § 1.451-3(b) (2) (1969).

This is an exception to the general rule that income is taxable when actually or constructively received. Fed.Tax Reg. § 1.451-1 (1969).

It remains to be seen, therefore, whether this in effect establishes the appropriate criteria for receipts or sales under the SBA regulations.

■ The purpose of the income tax laws and the regulations thereunder is to ultimately determine the amount of taxable income which can be described in a shorthand fashion as profit. From income derived from sales or other sources must be deducted the cost of doing business. This is sometimes difficult to do before a construction contract is complete. The completed contract basis takes the accounting uncertainty out of long-term construction contracts and aids in the implementation of

the tax laws which are designed to tax *gains*.

The Supreme Court in Commissioner of Internal Revenue v. LoBue, 351 U.S. 243, at p. 246, 76 S.Ct. 800, at p. 803, 100 L.Ed. 1142 (1955), stated:

> We have repeatedly held that in defining "gross income" as broadly as it did in § 22(a) [of the Internal Revenue Code] Congress intended to "tax all gains except those specifically exempted". * * *

See also, Ritter v. United States, 393 F.2d 823, 183 Ct.Cl. 875 (1968).

The underlying goal in the Small Business program is entirely different. The Small Business Act defines a small-business concern as "one which is independently owned and operated and which is not dominant in its field of operation. In addition to the foregoing criteria the Administrator, in making a detailed definition, may use these criteria, among others: Number of employees and dollar volume of business." Small Business Act, 15 U.S.C. § 632 (1958). The Administrator has set that figure for construction concerns at $7½ million for three years and has made the test in terms of "sales and receipts," not income as in the case of the Tax Regulations.

There is no suggestion in the Small Business Act or the regulations thereunder indicating an intention to expressly allow an exception as the Tax Regulations have done. There is no need to defer the determination as in the case of income tax computations. Certainty of profit calculations is not an issue. The language "sales and receipts" and "dollar volume" belies any such intention. Had the SBA intended such a result, it could have provided for an exception by regulation as did the Internal Revenue Service, although there would be some question as to the validity even then in light of the language of the statute.

Income connotes gain or profit, whereas "receipts," "sales," and "dollar volume" connote revenues received without any consideration of the cost of doing business.

In Hamilton Nat'l Bank v. District of Columbia, 81 U.S.App.D.C. 200, 156 F.2d 843 (1946), the Court stated, at p. 844:

> Gross receipts, gross income, and net income are different concepts. * * * Receipts differ from income as a matter of economic concept and constitutional importance, the former including capital and the latter not. Gross income becomes net by deductions. "Gross earnings" is not so certain in meaning but, generally speaking, means gross income. In this scheme of things, the cost of raw materials is eliminated from receipts to ascertain income, because *income is gain* and no gain is derived until cost of goods is recovered.

(Emphasis supplied.)

 Reading a completed contract method of accounting into the Small Business Act and regulations places an undue strain on the language. It is this Court's view that the regulation means what it says: A construction contractor will be considered small if "its average annual receipts for its preceding three (3) fiscal years do not exceed $7½ million." There is nothing in the statute, legislative history or the regulations to indicate a purpose to allow such receipts to be deferred to later years. Likewise, this Court can see no reason for such a deferral as exists in the income tax situation. The income tax regulation cannot be read into this statute and its regulations. There is no reason to so strain language. As the Supreme Court stated in Commissioner of Internal Revenue v. Brown, 380 U.S. 563, at p. 571, 85 S.Ct. 1162, at p. 1166, 14 L.Ed.2d 75 (1965):

> Unquestionably the courts, in interpreting a statute, have some "scope for adopting a restricted rather than a literal or usual meaning of its words where acceptance of that meaning would lead to absurd results * * * or would thwart the obvious purpose of the statute." * * * But it is otherwise "where no such consequences would follow and where * * * it

appears to be consonant with the purposes of the Act * * *."

Defendants' contention would cause the statute and regulations to mean something they obviously do not say. The usual and literal meaning of the words is consonant with the purpose of the statute while the opposite is not. The lag in accounting under the completed contract method could be such that a contractor could still qualify as small-business several years after his volume of receipts had passed the mark set by the Administrator. Congress intended to help the small grow large but it was clearly contemplated that upon reaching a certain size, the small-business concern would be weaned. It would be an anomaly for two companies doing substantially the same volume of work to receive different treatment because of different accounting methods, but this is precisely what could happen under defendants' concept of the applicable law.

The application of a completed contract method of accounting is in this Court's opinion erroneous as a matter of law. Since it is conceded that Allen Campbell had receipts in excess of $7½ million for the three preceding fiscal years, the determination of the Size Appeals Board cannot stand. An order will be entered setting aside that determination.