In the Matter of Orrin Dean TOWNSEND and Rose Georgia Townsend, Debtors.

Nos. 44202, 44203.

United States District Court,
W. D. Missouri, W. D.

Oct. 4, 1972.

Dennis G. Muller, Kansas City, Mo., for debtors.

Paul Anthony White, Asst. U. S. Atty., Kansas City, Mo., for petitioner.

## MEMORANDUM AND ORDER

COLLINSON, District Judge.

The United States has petitioned the Court in this Chapter XIII proceeding for review of the Referee's order of June 19, 1972, enjoining the Veterans' Administration (V.A.), the Administrator of Veterans' Affairs, his agents, servants and employees, and the Trustee from conducting any further proceedings in the sale of the debtors' home or in the enforcement of the V.A.'s asserted lien upon the debtor's home. Upon review we have determined that the Referee's order is proper in all respects and it will be affirmed.

The facts have been largely stipulated. In 1961, the debtors purchased their home in Gladstone, Missouri, with a V.A. insured loan of $17,250. The private lender foreclosed in 1964. The V.A. purchased the debtors' home at the foreclosure sale and sold it to the debtors on a direct loan of $18,400 with interest at 5½ per cent per annum. The debtors' note was made payable at the rate of $103.14 per month and was secured by a deed of trust on the debtors' home.

The debtors became delinquent in their payments almost immediately and they have not been current since that time. In 1966, debtor Orrin Townsend was employed by National Folding Chairs Company as a filing clerk. In five years he advanced to office manager. On September 7, 1971, he was discharged. By that time the debtors had reduced the arrearage on the V.A. loan to $987, i. e. they were seven monthly payments behind schedule.

In January, 1972, debtor Orrin Townsend, then in his fourth month of unemployment, conferred with the V.A. office in Kansas City, Missouri, regarding his delinquency. He was advised to make a partial payment of $1,000 on the existing arrearage and thereafter to make one and one-half the monthly payments as they became due until the arrearage was extinguished. This sum was tendered to the V.A. in St. Louis, Missouri. The V.A. refused the tender and directed the commencement of foreclosure proceedings. It should be noted that this foreclosure was the first to be initiated since the inception of the direct loan by the V.A. in 1964, even though the debtors were delinquent for virtually the entire seven years.

On January 19, 1972, the debtors' home was appraised at $22,000 by a professional real estate appraiser on behalf of the V.A. The debtors believe, however, that their home would sell for $21,500 at a forced sale and for $25,000 if allowed ample time to sell.

On February 23, 1972, the debtors filed a wage earners' plan under Chapter XIII of the Bankruptcy Act. 11 U.S.C. § 1001 et seq. (1970). They proposed to pay all existing debts and the entire arrearage on the V.A. loan within three years and to pay the $141 monthly payments (which includes insurance and escrow payments) on the V.A. loan as they became due. To this end, the debtors proposed to pay $75 per week to the Trustee to be distributed in the following fashion: (a) $141 per month to be applied to the V.A. loan; (b) $55 per month to be applied to the arrearage on the V.A. loan until extinguished and then to the other creditors under the plan; and (c) the balance to be paid to the other creditors according to the provisions of the plan. In addition, the debtors proposed to immediately pay $1,000 to the V.A. to be applied to the arrearage on the loan.

On March 7, 1972, the balance due on the debtors' note was $18,048.21 with interest at 5½ per cent per annum. At that time the debtors were $2,267.02 in arrears. Given that the $22,000 appraisal by the V.A. is accurate, the debtors presently have an equity of at least $4,000 in their home. Since the filing of the plan, the debtors have paid $75 each week to the Trustee as proposed.

Nevertheless, the V.A. notified the debtors that it intended to foreclose on the debtors' home without regard to the plan. The V.A. initiated foreclosure publication on April 6, 1972, for sale on May 3, 1972.

On April 6, 1972, the debtors applied to the Referee for an order staying enforcement of the lien asserted by the V. A. against the debtors' property. The debtors contended that the possession and use of their home was essential to the success of the plan, that their equity of $4,000 to $6,000 was jeopardized by the foreclosure proceedings, and that the requested stay would not injure or prejudice the V.A.'s security. On April 17, 1972, the Referee conditionally stayed the V.A.'s foreclosure proceedings, subject to reconsideration in the event the debtors failed or neglected to make the proposed payments. The Referee also ordered the debtors to keep and maintain the property in good condition and repair and adequately insured.

On April 21, 1972, the United States petitioned the Referee for reconsideration of his order staying the foreclosure proceedings. Upon reconsideration the Referee expanded his order to apply not only to the V.A., but also to the Administrator of Veterans' Affairs, his agents, servants and employees, and to the Trustee. On June 19, 1972, the Referee amended the order issued on the United States' petition for reconsideration. In the amended order, the Referee found that foreclosure would cause substantial loss and irreparable injury to the debtors' estate and would jeopardize consummation of the debtors' plan and that enjoining the foreclosure proceedings would not impair the V.A.'s security. Accordingly, the Referee again ordered that the V.A., the Administrator, and the Trustee be enjoined from conducting any further proceedings in the sale of the debtors' home or in the enforcement of its asserted lien upon the debtors' home, upon the condition that the debtors conformed to their plan and kept and maintained their home in good condition and repair and adequately insured. The Referee again provided that his order was subject to reconsideration upon five days' notice should the debtors fail to abide by the condition set forth in the amended order.

On May 22, 1972, the United States petitioned this Court for review of the Referee's order, contending that the order was improper because (a) the Referee did not have authority to enjoin the V.A., and (b) the referee did not have jurisdiction over the person of the Administrator of Veterans' Affairs. The Referee's certificate was filed on June 22, 1972. The parties have stipulated that no additional evidence need be adduced, that the petition shall be considered solely on the evidence adduced before the Referee as incorporated in the stipulations of facts now before the Court, and that the case be presented for adjudication on the briefs now before the Court.

At issue first is whether a referee in a Chapter XIII proceeding may enjoin enforcement by foreclosure of a lien on real property. Subsections (1) and (2) of section 606 of the Bankruptcy Act, 11 U.S.C. § 1006(1) and (2) (1970), restrict the scope of a wage earner's plan. Subsection (1) excludes claims secured by estates in real property from the definition of "claims" for the purposes of Chapter XIII, and subsection (2) defines a "creditor" as "the holder of any claim." The debtors' note held by the V.A. is secured by a deed of trust on the debtors' home, real property. As such, the V.A. neither has a "claim" nor is a "creditor" within the meaning of Chapter XIII. However, jurisdiction to enjoin foreclosure of a lien on real property is not subject to the same restrictions as is the scope of a wage earner's plan. Hallenbeck v. Penn Mutual Life Ins. Co., 323 F.2d 566, 569 (4th Cir. 1963).

Sections 611 and 614 of the Bankruptcy Act provide that the bankruptcy court retains jurisdiction over all of the debtor's property, without qualification as to its nature, and may enjoin or stay "any proceeding to enforce any lien upon the property of a debtor." 11 U.S.C. §§ 1011 and 1014 (1970). "From these sections of the Act, it appears that the Referee has exclusive jurisdiction

over all of the debtor's property, real and personal, during the entire period of consummation of the plan, and is specifically invested with jurisdiction to stay any proceedings to enforce a lien upon the debtor's property." In re Rutledge, 277 F.Supp. 933, 935 (E.D.Ark.1967). We conclude, then, as a first step, that the Referee's order was proper to the extent that it enjoined foreclosure proceedings to enforce a lien on the debtors' real property. *See, e. g.*, Hallenbeck v. Penn Mutual Ins. Co., *supra*, 323 F.2d, at 569–570; In re Clevenger, 282 F.2d 756 (7th Cir. 1960); In re Terry, 294 F.Supp. 253, 255 (S.D.Ga.1968), aff'd 411 F.2d 553 (5th Cir. 1969); In re Pizzolato, 268 F.Supp. 353, 357 (W.D.Ark. 1967); In re Willett, 265 F.Supp. 999, 1002–1003 (S.D.Calif.1967); In re Garrett, 203 F.Supp. 459, 460–462 (N.D. Ala.1962); In re Duncan, 33 F.Supp. 997, 998 (E.D.Va.1940).

Of concern next is whether the injunctive relief provided by section 614 of the Bankruptcy Act is available within the context of this case against the V.A. as a federal instrumentality. Our inquiry focuses on the doctrine of sovereign immunity. *See* United States v. Mel's Lockers, Inc., 346 F.2d 168 (10th Cir. 1965). 38 U.S.C. § 1820 (1970) provides, in part:

"(a) Notwithstanding the provisions of any other law, with respect to matters arising by reason of this chapter, the Administrator may—

(1) sue and be sued in his official capacity in any court of competent jurisdiction, State or Federal. . . ."

The Courts have consistently viewed such "sue and be sued" clauses as broadly waiving governmental immunity from suit, Federal Deposit Ins. Corp. v. Sumner Financial Corp., 451 F.2d 898, 904 (5th Cir. 1971), and the Supreme Court has treated such a clause as an express waiver of immunity, Federal Land Bank of St. Louis v. Priddy, 295 U.S. 229, 232, 55 S.Ct. 705, 79 L.Ed. 1408 (1935). *Accord*, Whipple v. Fuller, 109 N.Y.S.2d 62, 63 (Sup.Ct.1952) (holding the predeces-

sor of section 1820(a)(1) to be a waiver of immunity).

Since consent for the V.A. to "sue and be sued" has been given by Congress in section 1820, the only remaining issue in this connection is the scope of that consent. This issue was framed and resolved in an analogous setting by the Supreme Court in Federal Housing Administration v. Burr, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940). The *Burr* Court addressed the question whether the F.H.A., as a federal instrumentality, was subject to garnishment for money due in wages to an F.H.A. employee. The statute construed in *Burr* is almost identical to section 1820:

"The Administrator shall, in carrying out the provisions of this title and titles II and III, be authorized, in his official capacity, to sue and be sued in any court of competent jurisdiction, State or Federal." Act of August 23, 1935, c. 614, 49 Stat. 684, 722.

Since consent "to sue and be sued" had been given by Congress, the *Burr* Court reasoned, the problem merely involved a determination whether garnishment came within the scope of that authorization. The issue here can be similarly put: since consent to "sue and be sued" has been given by Congress, the problem merely involves a determination whether injunctive relief comes within the scope of the authorization of section 1820(a)(1).

■ In deciding that the F.H.A. was subject to garnishment, the *Burr* Court held that congressional waivers of governmental immunity in case of federal instrumentalities should be liberally construed. 309 U.S. at 245, 60 S.Ct. 488. *Burr* also announced the implications of this rule of liberal construction. In the absence of a showing (1) that certain types of suits are not consistent with the statutory or constitutional scheme, (2) that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or (3) that for other reasons it was plainly the purpose of Congress to use the "sue and be

sued" clause in a narrow sense, it must be presumed that when Congress launched a governmental agency into the commercial world and endowed it with authority to "sue and be sued," that agency is not less amenable to judicial process than a private enterprise under like circumstances would be. 309 U.S. at 245, 60 S.Ct. 488. The *Burr* rule of liberal construction and its consequent presumption, unless avoided by a contrary showing, are clearly applicable to the instant case.

■ Injunctive relief is unquestionably available in a Chapter XIII proceeding against a private enterprise. *See, e. g.,* Hallenbeck v. Penn Mutual Life Ins. Co., *supra;* In re Clevenger, *supra.* Since no statute exists which specifically prohibits the enjoining of the V.A. or the Administrator and since petitioner has not made the showing necessary to avoid the operation of the presumption adopted in *Burr,* the Court concludes that the "sue and be sued" clause of section 1820, as an express waiver of immunity, subjects the V.A. and the Administrator to the Referee's injunction.

Petitioner's arguments to the contrary are not well taken. First, petitioner relies upon Lloyd Wood Construction Co. v. Sandoval, 318 F.Supp. 1167 (N.D. Ala.1970), and Robinson v. Parkhurst, 289 F.Supp. 528 (W.D.Mo.1968), for the proposition that injunctive relief is not available against the United States unless there is a statute specifically authorizing it. Though these cases do reflect that general proposition, they are readily distinguishable. The *Wood* Court was concerned with the provision of the Small Business Act which "authorizes the Administrator to sue and permits him to be sued, but specifically provides that 'no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Administrator or his property;' 15 U.S.C. § 634(b)(1)." 318 F.Supp. at 1171. On the basis of this statute the *Wood* Court concluded that Congress has not granted a waiver of immunity as to injunction suits against the S.B.A. 318

F.Supp. at 1171. We do not dispute the validity of this decision. It will suffice to point out that the "sue and be sued" clause in the instant case (section 1820) does not exempt injunctive relief from the waiver of immunity as was the situation in *Wood.* Robinson v. Parkhurst, *supra,* is even more handily distinguished; it did not even involve a "sue and be sued" waiver.

Secondly, petitioner maintains that the general language of the Bankruptcy Act cannot be construed as a waiver of governmental immunity. Although there appears to be authority to the contrary, it is not necessary to consider this argument for our conclusion that there has been a congressional waiver rests on the language of section 1820 rather than the general language of the Bankruptcy Act.

■ Although the Referee is empowered under Chapter XIII to enjoin the V.A. from enforcement of its lien on the debtors' real property, the exercise of that power may be reviewed to determine whether there has been an abuse of discretion. Hallenbeck v. Penn Mutual Life Ins. Co., *supra,* 323 F.2d at 572. The *Hallenbeck* court suggested that at least three conditions should be met before the injunctive power may be properly exercised: "The injunction or stay must be necessary to preserve the debtor's estate or to carry out the Chapter XIII plan; (2) the granting of the injunction must not directly or indirectly impair the security of the lien; and (3) the owner of the secured indebtedness must not be required to accept less than the full periodic payments specified in the contract." 323 F.2d at 572. It has also been suggested that before entering an injunction, the Referee should insure the payment of any delinquency within a specific set amount of time. In re Rutledge, *supra,* 277 F.Supp., at 936. Satisfaction of these four conditions strikes an equitable balance between the interests of the secured party, whether the security is in real or personal property, and the rehabilitative purpose of a Chapter XIII proceeding.

In connection with these specific conditions, the Court notes as a general and guiding proposition that in rehabilitative proceedings, such as contemplated under Chapter XIII, injunctive relief should be granted more liberally than would be the case in other proceedings. In re Willett, *supra,* 265 F.Supp., at 1003.

In terms of the delineated conditions and the above proposition, the Court finds that the Referee's discretion was properly exercised. The Referee specifically found that "[f]oreclosure would cause substantial loss to the debtors' estate, would jeopardize the debtors' consummation of their plan, and cause irreparable injury to the estate if not enjoined." Since this finding of fact is not clearly erroneous, the Court is compelled to accept it as correct. 28 U.S.C., Appendix, General Order 47 (1970). Also, the injunction per se will in no way impair the security of the V.A.'s lien. To that end, the Referee has ordered the debtors to keep and maintain the property in question in good condition and repair and adequately insured. If the debtors fail in this or any other condition of the injunction, including adherence to their plan, the Referee has provided for prompt reconsideration of the injunction. The debtors' plan itself, as incorporated in the order of injunction, satisfies the last of the *Hallenbeck* conditions and the additional *Rutledge* condition: (1) the V.A. will receive the required monthly payment on its loan to the debtors; and (2) although the Referee did not set a specific date by which the debtors' delinquency was to be extinguished, the requirement that $50 per month be applied to the delinquency is merely another, and perhaps more precise and restrictive, manner of setting a specific date.

Lastly, petitioner asserts that the Referee erred in enjoining the Administrator of Veterans' Affairs since there was no jurisdiction over the person of the Administrator. This, of course, presumes that *in personam* jurisdiction was necessary. We find that it was not necessary. Although *in personam* jurisdiction may have been a prerequisite to the common-law equitable remedy of injunction, this case is set in a statutory context. The bankruptcy court has exclusive jurisdiction of the debtors and of their property, wherever located, during the consummation of the plan, 11 U.S.C. § 1011 (1970), and enforcement of the V.A.'s lien could be enjoined "upon notice and for good cause shown," 11 U.S.C. § 1014 (1970). Petitioner does not contend that there was no notice or that the notice given did not conform to section 615 of the Bankruptcy Act, 11 U.S.C. § 1015 (1970), and we have no reason to find otherwise. Given *in rem* jurisdiction, notice, and good cause shown, the Referee's injunction was valid without regard to *in personam* jurisdiction of the Administrator.

It is therefore

Ordered that the Referee's order of injunction be, and hereby is, affirmed.