396 F.Supp. 518 (1974)
In re Ernest P. GARCIA, Mary V. Garcia, Debtors.
GENERAL MOTORS ACCEPTANCE CORPORATION, a corporation, Plaintiff,
v.
Ernest P. GARCIA et al., Defendants.
Nos. BK 74-1520, BK 74-1521.
United States District Court, C. D. California.
November 13, 1974.
*519 Tredway, Brandmeyer & Ward, John A. Torribio, Downey, Cal., for appellant General Motors Acceptance Corp.
Robert W. Alberts, Gary S. De-Malignon, Jerome Edelman, Santa Ana, Cal., for trustee-appellee.

MEMORANDUM AND ORDER AFFIRMING BANKRUPTCY JUDGE
WESTOVER, District Judge.
Ernest P. Garcia and Mary V. Garcia filed petitions under Chapter XIII of the Bankruptcy ActWage Earner proceeding on February 5, 1974; and on March 6, 1974 General Motors Acceptance Corporation filed its claim.
The plan in the proceeding provided that secured debts, duly proved and allowed and held by creditors who accepted the plan, should have priority over unsecured creditors up to the actual value of their security. The plan provided that General Motors Acceptance Corporation and Investor's Thrift would be paid three-fourths of their contract monthly payment. Investor's Thrift accepted the plan. General Motors Acceptance Corporation rejected. The plan was confirmed at the first meeting of creditors on March 14, 1974.
Thereafter General Motors Acceptance Corporation filed a complaint for reclamation of the 1973 automobile which secured Debtors' debt. Answer was filed by Debtors, and hearing on the complaint was held June 11, 1974, on which date the cause was argued and submitted for decision. Memorandum of Decision was filed by the Bankruptcy Judge on June 28, 1974; and General Motors Acceptance Corporation filed Notice of Appeal to the District Court.
Appellant stated the issues on appeal as follows:
"May a Wage Earner Plan be confirmed despite rejection by a secured creditor whose claim has been dealt with as defined by 652 of the Bankruptcy Act, 11 USC 1052.
"May a rejecting secured creditor be denied the right to reclaim its security when the referee has reduced the periodic payments due pursuant to the contract between the debtor and *520 the secured creditor and the secured creditor has rejected the Wage Earner Plan."
Briefs on appeal were duly filed and, at the hearing on appeal before the District Court, counsel presented argument. The matter was taken under submission.
Examination of the records and file in the case, consideration of argument by counsel on appeal, and careful review of the Memorandum of Decision filed by the Bankruptcy Judge and designated by him as constituting "sufficient findings of fact and conclusions of law" are convincing that the Memorandum of Decision is fully explanatory of his ruling. Based upon the Bankruptcy Judge's reasoning and pursuant to the authorities cited and relied upon by him.
It is ordered that the June 28, 1974 Order of the Bankruptcy Judge is affirmed.

MEMORANDUM OF DECISION
The debtors filed their petitions under Chapter XIII of the Bankruptcy Act on February 5, 1974, alleging that they were unable to pay their debts as they matured. Insofar as is herein material. the plan provided that secured debts duly proved and allowed and held by creditors who accept the plan should have priority over unsecured creditors up to the actual value of their security, and that General Motors Acceptance Corporation (GMAC) and Investor's Thrift would be paid three fourths of their contract monthly payment. Investor's Thrift accepted the plan. GMAC filed its claim on March 6, 1974, for $4,372.40, secured by a 1973 Chevrolet automobile, and specifically rejected the plan. Because the plan affected only those secured creditors who accepted the plan, the plan was confirmed at the first meeting of creditors on March 14, 1974, in spite of GMAC's rejection, Cheetham v. Universal CIT, C.A. 1st, 390 F.2d 234.
The debtors' payments on the automobile contract to GMAC were current at the time of filing their Chapter XIII cases, having paid the installments due through February 15, 1974. At the present time the debtors are current in their payments under the plan to the trustee.
On May 8, 1974, GMAC filed a complaint for reclamation of the 1973 Chevrolet automobile. The debtors answered and hearing was had on the complaint on June 11, 1974. Evidence was received and the matter was argued and submitted for decision.

ALLOWANCE OF CLAIM
First of all, it would be appropriate to value the 1973 Chevrolet automobile as provided in Bankruptcy Rule 13-307(d).
"Secured Claims. If a secured creditor files a claim, the value of the security interest held by him as collateral for his claim shall be determined by the court. The claim shall be allowed as a secured claim to the extent of the value so determined and as an unsecured claim to the extent it is enforceable for any excess of the claim over such value. For the purposes of this subdivision the court may appoint an appraiser in the manner specified by and subject to the limitations of Bankruptcy Rule 606."
The notice of first meeting of creditors duly served on all creditors provided in part as follows:
"Creditors claiming secured status in order to qualify for priority in payment, if priority is proposed by the plan, should see Bankruptcy Rules 13-302-E- -1- and 13-307-D-. Secured creditors must prove their security interest by, e. g., supplying copies of UCC-1, contract, security agreement, ledger cards, pink slips, etc. You are invited to submit any appraisal of value of your collateral. Your secured status and priority may be limited to the value of the collateral.....
Interest may be allowed on secured debt if the value of the security is more than the amount of principal due, and if the plan provides, will be limited to ten percent per annum.

*521 All interest should be calculated or rebated to the date the petition was filed."
No attempt was made to value the 1973 Chevrolet at the first meeting on March 14, 1974. I appointed an appraiser who filed his verified appraisal on March 18, 1974, valuing the automobile for $2,850.00. Both counsel for the debtors and counsel for GMAC examined the appraisal at the trial on June 11, 1974, and stipulated that the court could consider it. I find that the value of GMAC's collateral on February 5, 1974, to be $2,850.00, and it follows that the claim of GMAC should be allowed as secured in the amount of $2,850.00, and the allowable portion of any amount over that sum should be allowed as unsecured. The rationale behind this rule is only common sense. If GMAC were to have repossessed the automobile on the date of filing they could have realized $2,850.00 on a resale, and they would have a deficiency as to any excess, for which they would obviously be unsecured.

INTEREST
The debtors purchased the subject automobile from Guardian Chevrolet on June 4, 1973, from $4,793.25 which included sales tax of $228.25. They paid $1,000.00 cash down, leaving an unpaid balance of $3,793.25 to which was added official fees of $65.00 and a finance charge of $1,388.63, making a total of $5,246.88 payable in 48 installment payments of $109.31 each. The debtors made 8 payments of $109.31 through February 15 of 1974 for a total of $874.48, and in addition thereto, I ordered the Chapter XIII trustee to make one payment of $109.31, without prejudice, to GMAC making total payments of $983.79. Having paid $1,983.79 on account of this automobile, the debtors certainly have a substantial financial interest in the car even though it is worth less than the balance due on the contract. It is interesting to note from GMAC's ledger card which is attached as an exhibit to their complaint that the portion of the $1,388.63 finance charge on the contract that would be earned by GMAC during the life of the contract is $771.65, and that the balance of the finance charge of $616.98 is extra profit to the dealer. The sales contract was purchased by GMAC on June 13, 1973, at which time GMAC paid the dealer the net amount due under the contract (without interest) of $3,858.25 plus a portion of the unearned finance charges of $462.65 for a total of $4,320.90. The balance of the dealer's portion of the finance charge of $154.33 remains in the dealer's reserve account with GMAC. Of course, in the unlikely event that the customer should pay off the contract early and be entitled to a rebate of unearned interest, the dealer would have to share its pro rata portion of the rebate which is customarily adjusted through the dealer's reserve account. GMAC advises me that this is a rather common practice in automobile financing, that the dealer will charge whatever he can get up to the maximum permitted by California Law, knowing that anything the customer will stand still for, over and above his predetermined contract rate with GMAC, is additional profit. In this case, without the knowledge of the debtors, the dealer made an immediate additional profit on the finance charge of $462.65 and a deferred profit of $154.33. I will take note of the impression that GMAC together with General Motors dealers attempt to create in the mind of the public that you should buy a General Motors product because GMAC will finance it at the lowest possible interest rates. It is no wonder that automobile dealers generally are distrusted by the public. I for one feel that the undisclosed kick-back of a substantial portion of the finance charges to the dealer to be unconscionable. Counsel for GMAC's statement that this is extra inducement to the dealer to sell his contract payment to GMAC, that GMAC is competing with other lenders, and that if GMAC did not kick back a portion of the finance charge to the *522 dealer that it would lose the business to some other financial institution that would is a weak excuse.
Perhaps it is poetic justice that finance charges accruing, or to be earned after the date of filing of the Chapter XIII, on February 5, 1974, be disallowed for another reason. It has long been the rule that interest stops on secured debt as of the date of bankruptcy, Sexton v. Dreyfus, 219 U.S. 339, 31 S.Ct. 256, 55 L.Ed. 244; Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 163, 67 S.Ct. 237, 91 L.Ed. 162. There is an exception to that rule that where the value of the security is more than sufficient to pay the principal of the debt secured, the excess may be applied on post-bankruptcy interest on the obligation secured, In re Macomb Trailer Coach (C.A. 6th), 200 F.2d 611, 613; Cert. Denied McInnis v. Weeks, 345 U.S. 958, 73 S.Ct. 940, 97 L.Ed. 1378. That exception does not apply where, as here, the collateral is worth less than the amount of the debt.
Therefore, rebating unearned interest to the date of filing of $968.29, GMAC's claim should be allowed for a total of $3,513.42, $2,850.00 secured and $663.42 unsecured.

RECLAMATION
GMAC's complaint seeks payment in full or recovery of the vehicle, and for general relief. Implicit in its prayer is a request to be relieved of the automatic stay of lien enforcement provided in Bankruptcy Rule 13-401. The reported cases antedating the effective date of the new rules speak in terms of an injunction against foreclosure and I have attempted to translate the holdings into terms of stay or relief from stay.
Mr. Garcia has worked for Hunt-Wesson Foods in Fullerton, California for 20 years. He works 7 A.M. to 3 P.M. and leaves home at 6:15 A.M. to go to work. The trip is about 13 miles one way. He knows of no other person in his department that lives in Santa Ana with whom he could ride. He drives the 1970 Chevrolet pick-up encumbered to Investor's Thrift.
Mrs. Garcia works 8 A.M. to 5 P.M. for the Orange County Welfare Department. She drives the 1973 Chevrolet encumbered to GMAC. As part of her duties she calls upon persons on welfare and is often required to transport them to the Orange County Hospital for treatment. She does not have use of a county vehicle.
There are no other vehicles available to the debtors, and the wages of both debtors are necessary to the plan as well as their current living expenses.
It is clear that I can and should deny reclamation on condition that the debtors pay the full monthly contract payment of $109.81. However, I believe that I can and should go further and deny reclamation even though monthly payments to GMAC are less than the contract amount.
In a wage earner proceeding under Chapter XIII, Thompson v. Ford Motor Credit Company, C.A. 5th, 1973, 475 F. 2d 1217, the debtor fell behind on his payments to the secured creditor on his automobile and Ford petitioned for reclamation. Held; Referee properly exercised his discretion in denying reclamation under the circumstances, stating at 1218,
"The referee may properly deny reclamation in the following circumstances. (1) General equitable considerations, including the debtor's good faith and ability to pay, should favor restraining foreclosure. (2) The injunction against foreclosure must be necessary to preserve the debtor's estate or carry out the Chapter XIII plan. (3) The injunction must not impair the security of the lien. (4) The owner of the secured indebtedness must not be required to accept less than the full periodic payments specified in the contract." (Citing Hallenbeck v. Penn Mutual Life and Cheetham v. Universal CIT (Credit Corp.)
The debtor fell behind on his payments by reason of a work connected injury. *523 Loss of the car would have endangered his employment. The total debts to other secured creditors plus unsecured creditors exceed the debt to Ford. Foreclosure might make Ford whole, but it would effectively destroy any hope that Thompson would be able to pay other creditors.
Cheetham v. Universal CIT Credit Corporation, supra, also involved an attempted reclamation of automobile in a Chapter XIII.
However, I suggest that the statement in both THOMPSON and CHEETHAM that the secured creditor must get his full contract payment is misplaced reliance on Hallenbeck v. Penn Mutual Life, C.A. 4th, 323 F.2d 566. That case involved an injunction against foreclosure of a deed of trust upon the debtor's home in a wage earner proceeding. The obligation on a long term note secured by a deed of trust on real estate, which obligation will survive the duration and consume the wage earner's plan, could only be handled by requiring that the trust deed obligation be current at the conclusion of the case. But in the case of an automobile, the contract can be paid off in full during the proceeding. This distinction was not noted in THOMPSON or CHEETHAM.
The terms of the conditional sales contract are not sacrosanct. In re Teegarden, E.D.Ky., 330 F.Supp. 1113, the court affirmed the denial of reclamation of an automobile to GMAC in a wage earner case pointing out that the test is not whether the terms of the contract are modified because the Bankruptcy Act becomes a part of a contract when made [In re Jersey Island Packing Co., C.A. 9th, 138 F. 625, 14 Am.B.R. 689; Wright v. Union Central Life Insurance Co., 304 U.S. 502, 517, 58 S.Ct. 1025, 82 L.Ed. 1490] but rather whether the secured creditor is denied due process. See also In re Pizzolato, W.D.Ark., 268 F.Supp. 353 where reclamation of an automobile was denied. There was a balance due on the contract of $645.36 payable at $70.00 per month with a balloon payment of $435.36. Under the plan, the balloon payment was to be disregarded and the balance paid off at $70.00 per month. The court noted that the secured creditor would not be seriously delayed and that its security would not be impaired and cited HALLENBECK as authority for restraining a non-consenting creditor.
I have concluded that reclamation should be denied if the first three elements of the test suggested by the THOMPSON case, supra, are met, to wit:
(1) General equitable considerations, including the debtor's good faith and ability to pay, should favor restraining foreclosure,
(2) The injunction against foreclosure must be necessary to preserve the debtor's estate or carry out the Chapter XIII plan, and
(3) The injunction must not impair the security of the lien.
I would add one further condition that the contract amount, as allowed, be liquidated during the term of the wage earner plan.
For an excellent discussion of the history of and the development of the law applicable to this decision see THE SECURED CREDITOR IN WAGE EARNER PROCEEDINGS: DREAM VERSUS REALITY by BANKRUPTCY JUDGE POULOS, July 1970, 44 Journal of the National Conference of Referees in Bankruptcy 68.
The trend is in the direction of restraining secured creditors, if necessary to rehabilitate the debtor. See In re Bermec Corporation, C.A.2d, 445 F.2d 367, a Chapter X case in which the court said at 369,
"We are conscious of the deep concern of the manufacturing secured creditors lest their security depreciate beyond adequate salvage, but we must balance that with the Congressional mandate to encourage attempts at corporate reorganization where there is a reasonable possibility of success. Nor *524 can we find clearly erroneous the finding that the Trustees will be able to pay the "economic depreciation" on the secured creditors' equipment so as approximately to preserve their status quo. In sum, we cannot find the prospect so hopeless as to require setting aside the order below as might have been required in a case where there was, indeed, no reasonable possibility of a successful reorganization."
See also Fruehauf Corp. v. Yale Express, C.A.2d, 384 F.2d 990, also a Chapter X case.
Considerations which make it appropriate to restrict the rights of a creditor secured by personal property to the payment of "economic depreciation" of his collateral in a Chapter X case should apply also in a Chapter XIII case. In HALLENBECK, supra, at page 570 the court states,
"The general purpose of Chapter XIII is to afford a means of relief and rehabilitation to persons dependent upon their earnings from personal services by providing a method for effecting a composition with creditors, or extension of time to pay debts, or both. Providing a means of relief and rehabilitation to debtors without adjudication as bankrupts is the common principal purpose of Chapter X, XI, XII and XIII of the Bankruptcy Act. Examination and comparison of the structures and specific provisions of these chapters reveal many similarities. See 9 Remington on Bankruptcy § 3747 (6th ed. 1955). Except for recent amendments, the provisions of all four of these chapters were enacted simultaneously on June 22, 1938, in the Chandler Act. The primary differences between the chapters relate to the persons who may avail themselves of relief and the obligations which may be ultimately affected. See 8 Collier on Bankruptcy 2.06 (14th ed. 1941) Although these basic differences should be kept in mind, the parallel structure and common purposes of these four chapters should not be ignored or disregarded.
. . . It is well settled that statutes which relate to the same persons or things, or the same class of persons or things, or have a common purpose may be regarded as in `pari materia'."
In the case now before me, according to the Kelly Blue Book Auto Market Report, the wholesale value of the subject vehicle was as follows:

 Nov.Dec. 1973 $2,800.00
 Jan.Feb. 1974 2,850.00
 Mar.Apr. 1974 2,650.00
 MayJune 1974 2,625.00

Based upon these limited figures it appears that the automobile is depreciating at the rate of $30.00 per month.
Counsel for GMAC points out that a 1972 Chevrolet, the same model, depreciated $525.00 the prior year according to the Kelly Blue Book, or $43.75 per month. However, in order to liquidate the secured claim of GMAC during the duration of the proposed plan, approximately 48 months, the paymentts should be $72.00 per month.
I have reached the conclusion that: (1) General equitable considerations including the good faith of the debtors and their ability to pay favors denial of reclamation of the vehicle and the continued stay of Bankruptcy Rule 13-401 and in regard to that rule, I specifically hold that the debtors have carried their burden of proof; (2) The denial of reclamation and the continued stay of lien enforcement is necessary to preserve the debtors' estate and to carry out their plan; (3) Payments of $72.00 per month will more than compensate GMAC for "economic depreciation" and therefore that GMAC's collateral is not being impaired; and (4) That the secured and unsecured indebtedness to GMAC will be liquidated in approximately 48 months.
I will emphasize that the payment of $72.00 is to be paid as a condition of the continued stay of lien enforcement, not pursuant to the plan. The debtors proposed paying 75% of the contract payment or $81.98 per month to *525 GMAC, and that amount is included in the monthly payment to the trustee of $157.00. As stated in footnote 4 of the HALLENBECK decision,
". . . . it makes no substantial difference whether the payments are made to the creditor by the trustee under the plan or directly to the creditor under the provisions of the injunctive order."
GMAC further alleges that it will lose its right of recourse against the dealer unless it is able to return the car to the dealer before the contract becomes 3 months delinquent. I must again refer to the cases, supra, that hold that when contracts are entered into, the parties are deemed to know that the Bankruptcy Act may override some provision in the contract. Although the point is not before me it may well be that the GMAC contract with the dealer must be read so as to excuse the recourse provision referred to when GMAC is stayed from repossessing the car. Or perhaps it is a risk that GMAC assumes. For years they have been aware of the problem created in enforcement of their contract should the buyer file a petition for a wage earner plan and they can certainly contract around that problem. They cannot now be heard to say that they have created a problem in their dealership contract that can now be set up to defeat relief that should be allowed the debtor.
Should circumstances change, GMAC can always return to court for relief from stay.
This decision is without prejudice to GMAC right, at any time, to accept the terms of the plan and thereafter receive $81.98 per month, under the plan.
This memorandum constitutes sufficient findings of fact and conclusions of law.
DATED: June 28, 1974.
 (s) P. ELLIOTT 
 P. ELLIOTT
 BANKRUPTCY JUDGE